Manassas

DANIEL L. SPELLER

v.

COMMONWEALTH OF VIRGINIA

No. 0056-85

Decided June 17, 1986

438

COUNSEL

Susan L. Korfanty, for appellant.

Lucy H. Allen, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

COLE, J.—The appellant, Daniel L. Speller, was tried and convicted by a jury on indictments charging him with burglary and grand larceny. He was sentenced to eighteen years in the penitentiary.

The issues raised on appeal are: (1) whether the court erred in refusing to permit Speller's mother to testify that he had polio as a child and suffered from continuing disabilities which would have impaired his ability to flee the scene on foot; (2) whether the court erred in limiting cross-examination of a Commonwealth's witness, who was also a suspect to the crime, concerning disposition of pending charges against him and aspects of the plea agreement granting immunity from prosecution; and (3) whether the court erred in admitting in evidence the details of the description of Speller which was transmitted over the radio to officers involved in the surveillance, when the identification and description were the result of a codefendant's confession—since the codefendant did not testify at trial and the confession was excluded prior to trial. We hold that the court erred in refusing to permit the mother to testify and in limiting the cross-examination of the Commonwealth's witness. For these reasons, we reverse.

The evidence adduced at trial taken in the light most favorable to the Commonwealth, is as follows: Pursuant to an ongoing investigation of burglaries in the area, the Arlington County Police Department placed under surveillance an apartment at 5800 Washington Boulevard. The police identified three suspects: Eugene Lipscomb, who lived in the apartment, Brian Lee Waldron, who frequented the apartment, and Speller. On November 23, 1983, Speller was observed leaving the apartment with Waldron. Although the officer who observed the two men leaving the apartment had only seen pictures of Speller prior to that evening, he testified that there was no question in his mind that Speller was the man he had seen. Surveillance by the police continued as Speller and Waldron drove to a residential neighborhood and parked at the corner of Quebec Street and Nellie Custis Drive. They left the car and were later observed returning and placing items in the car. The approach of a vehicle caused the two men to flee on foot. Waldron was apprehended, but Speller was not located at the scene. An officer returned to the Washington Boulevard apartment and arrested Speller there when he returned in a taxi cab. A search of his person revealed a small magnifying glass later identified as one of the objects taken during a burglary that evening of a residence at 2395 North Quincy Street, adjacent to Quebec Street and Nellie Custis Drive.

## I.

Speller contends that the court erred by restricting the testimony of his mother, Alenie Steppenchuck. Police testimony showed that at the time of Waldron's arrest, a second suspect believed to be Speller, ran from the scene of the larceny and eluded capture. Speller claims that the Commonwealth argued that if he were not so fleet of foot, he would have been caught at the scene. He desired to show through his mother's testimony that he had polio as a child and that his continuing disabilities from it limited his capacity to flee on foot. The court refused to permit the mother's testimony because "she's not a medical person" and ". . . just because a person may or may not testify doesn't mean that that person can substitute another to give testimony that person would ordinarily give if he would testify." Speller assigns error to the ruling of the court and to both of the reasons the court gave for its ruling.

■ The Commonwealth submits that his assignment of error should not be considered because the record does not reflect a proper proffer. *See Wyche* v. *Commonwealth*, 218 Va. 839, 843, 241 S.E.2d 772, 775 (1978); *Whittaker* v. *Commonwealth*, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). When an objection is sustained and evidence is rejected, it is incumbent upon the proponent of the evidence to make a proffer of the expected answer; otherwise, the appellate court has no means of determining if the evidence is material or otherwise admissible. *See Blue Cross* v. *Commonwealth*, 221 Va. 349, 357, 269 S.E.2d 827, 832 (1980). The Virginia Supreme Court has held that:

[A] unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected constitutes a proper proffer, and that absent such acquiescence or stipulation, this Court will not consider an error assigned to the rejection of testimony unless such testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court.

*Whittaker* v. *Commonwealth*, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977).

As in *Whittaker*, we find that defense counsel's avowal, the truth of which was unchallenged by the Commonwealth, constituted a proper proffer, and for the reasons stated above, we hold that the trial court erred in refusing to allow Mrs. Steppenchuck to answer questions pertaining to the physical condition of her son. Her evidence was relevant as tending to prove that appellant could not have been the person who fled the burglary scene as the Commonwealth contends.

█ With regard to the finding that she was not a "medical person," the longstanding Virginia rule is that a witness need not be a medical expert to offer testimony concerning a person's physical condition:

> The opinions of lay or nonexpert witnesses who are familiar with a person whose physical condition is in question and have had opportunity for observing him are competent evidence on issues concerning the general health, strength, and the bodily vigor of such person, his feebleness or apparent illness, or changes in his apparent state of health or physical condition from one time to another.

*Pepsi-Cola Bottling Co.* v. *McCullins*, 189 Va. 89, 97, 52 S.E.2d 257, 260 (1949) (quoting 20 Am. Jur. *Evidence* § 859, at 719). Certainly a mother would be familiar with a bout with polio suffered by a child and would have had an opportunity to observe him since that time. Thus, her firsthand observations would establish her competency to testify as a lay witness as to Speller's physical condition, and the trial court's refusal to allow her to testify because she was not a "medical person" was clearly wrong.

The court's ruling that Speller could not substitute another person to testify as to matters on which he himself could testify is erroneous. The effect of the trial court's ruling was to preclude relevant, admissible evidence on behalf of Speller because he did not choose to take the witness stand and offer the evidence personally. By handicapping Speller's defense in this manner, the court achieved the impermissible result of imposing a penalty on him for exercising his constitutional privilege. *Cf. Griffin* v. *California*, 380 U.S. 609 (1965).

## II.

Eugene Lipscomb testified on behalf of the Commonwealth. According to his testimony, Speller and Waldron planned the burglary in his apartment the day before and Speller and Waldron left around dusk on November 23, 1983, to carry out their plan. Later that evening Lipscomb received a phone call from Speller stating that, "Brian [Waldron] had been arrested with the stuff on him." Speller then asked Lipscomb for a ride back to the apartment, but Lipscomb had no transportation and suggested to Speller that he take a taxi cab. Lipscomb testified that pursuant to an agreement with the Commonwealth, in exchange for his testimony, he was to receive "total immunity" for any part he may have had in the burglary, and suspended sentences in exchange for his guilty pleas on unrelated misdemeanor charges pending against him.

Speller contends that the court erred in limiting his cross-examination of Lipscomb. In an effort to show Lipscomb's motive and bias for testifying against Speller, Speller sought to cross-examine Lipscomb on the particular details of his plea agreement with the Commonwealth. Specifically, Lipscomb was asked to explain the disposition of a pending grand larceny charge brought against him on July 30, 1984, involving an automobile. The court sustained an objection to the question, ruling that in order to be admissible, the evidence must show a *conviction* of a felony or a crime involving moral turpitude.

It is apparent that the court was referring to the provisions of Code § 19.2-269 that a conviction for "felony or perjury" may be shown to impeach the credibility of a witness. The credibility of a witness may also be attacked by showing that the witness has been convicted of a misdemeanor involving moral turpitude or one affecting the witness's character for veracity. *Hackman* v. *Commonwealth*, 220 Va. 710, 261 S.E.2d 555 (1980).

The purpose for which evidence of the disposition of Lipscomb's grand larceny charge was offered, however, was not to show his general character and lack of credibility. Defense counsel sought to elicit the information regarding the charge in order to show the full benefit of Lipscomb's agreement with the Commonwealth, thereby disclosing any possible bias or motive he may have had to

fabricate his testimony.

The accused has a right to cross-examine prosecution witnesses to show bias and motivation. *Hewitt* v. *Commonwealth*, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984). Inquiries of this nature are always relevant, and the factfinder should consider the evidence of bias and motivation in assigning the weight to be accorded to the testimony of the witness. The factfinder may thereupon accept or reject completely the testimony of the witness. C. Friend, *The Law of Evidence in Virginia* § 29 (2d ed. 1983). Indeed, the Supreme Court of Virginia has consistently held that "the right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute." *Barker* v. *Commonwealth*, 230 Va. 370, 376, 337 S.E.2d 729, 733 (1985) (quoting *Hewitt* v. *Commonwealth*, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984)).

We believe that Speller's inquiry was an appropriate subject of cross-examination to test the extent to which the reliability of Lipscomb's testimony was affected by considerations of motive, bias and self-interest. Therefore, we find that the trial court erred in restricting the cross-examination of Lipscomb.

It is established by numerous cases that where it affirmatively appears that an error of the trial court could not affect the merits of the case, nor prejudice the party appealing, the appellate court will not reverse the judgment on the ground of such error. *Reid* v. *Commonwealth*, 213 Va. 790, 795-96, 195 S.E.2d 866, 870-71 (1973); Code § 8.01-678; 1B Michie's Jur. *Appeal and Error* § 285 (Repl. vol. 1980). The converse of the proposition as to the admission of evidence is equally true, *viz.*, that to authorize the reversal of a judgment for refusal to admit relevant testimony, not only must the evidence be relevant, but it must be of such a nature that its rejection may have prejudiced the party offering it. If he may have been prejudiced, even though it be doubtful whether in fact he was or not, that is sufficient ground for reversing the judgment. "When a party offers evidence which he is entitled to introduce to maintain the issue on his part and it is excluded, it will be presumed that he was prejudiced thereby and will work a reversal of the judgment, unless it clearly appears from the whole record that such evidence, if it had been admitted, could not have changed the result." 1B Michie's Jur. *Appeal and Error* § 305 (Repl. vol. 1980); *cf. Brittle* v. *Commonwealth*, 222

Va. 518, 522, 281 S.E.2d 889, 890 (1981); *Caldwell* v. *Commonwealth*, 221 Va. 291, 296, 269 S.E.2d 811, 815 (1980).

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware* v. *Van Arsdall*, ___ U.S. ___, 106 S.Ct. 1431, 1438 (1986) (citations omitted).

Applying these criteria to the facts and circumstances of this case, we find that the twofold errors in limiting the admissibility of evidence was prejudicial. We cannot say that the presumption of prejudice was overcome, nor can we say that the errors were harmless beyond a reasonable doubt. We therefore reverse the judgment.

### III.

Finally, Speller argues that error was committed by the trial court when it allowed the Commonwealth to offer evidence of a description of Speller on the night of the larceny gained from Brian Lee Waldron's confession. The police interrogated Waldron after he was apprehended. He refused to name his accomplice, but did state that his initials were D.S. A description of Speller was transmitted by police radio to other officers searching the area for the other burglar, but the record is not clear whether the description was given to the police by Waldron or whether the police knew the description from their own knowledge of Speller.

The Commonwealth made an agreement with Waldron. In exchange for his guilty plea, Waldron would not be called by the Commonwealth as a witness against Speller. Speller contended that Waldron's confession, or any reference to Speller's description contained in it, should not have been admitted in evidence because it was hearsay and he had no opportunity to cross-examine Waldron concerning the confession or the description con-

tained in it.

Prior to trial, Speller filed a motion to exclude all evidence and testimony concerning the confession, and all information contained in the confession, including a description of Speller. The Commonwealth agreed to this exclusion, with the admonition that in the event that defense counsel "opened the door," the Commonwealth would be able to respond to such evidence.

The Commonwealth honored its agreement and presented no evidence relating to Waldron's confession or even the broadcast of the description of Speller. On cross-examination of Officer Steven Brodhurst, defense counsel raised a number of questions about whether a description of Speller had been given to the police who were trying to locate Speller and who had never seen him. Brodhurst gave the only answer available to him under the agreement when questioned by defense counsel:

Q: So, you didn't transmit over the radio, even at this point, the identities of these people or what they were wearing?
A: I got to the car after the chase had begun.
Q: Did you or did you not?
A: I did not.
Q: Were there people being called in to help out who were not involved in the surveillance? Weren't other police officers being called in to assist in locating the two men who fled?
A: Yes, there were.
Q: Did you transmit over the radio to them—
A: (interposing) No, I did not.
Q: (continuing)—what the people looked like, who they were and what they were wearing?
A: I did not.
Q: And they were looking for these people in the back yards of that neighborhood, were they not?
A: Yes, they were.

The transmission of the description was, therefore, brought up by Speller himself, and under the agreement the Commonwealth had reserved its right to respond to it. On redirect the Commonwealth was permitted by the court to establish that a description of the suspect had in fact been broadcast, although the source and details of the description were not disclosed.

■ Defense counsel's questioning as to the existence of a broadcast description clearly "opened the door" on this issue, and Officer Brodhurst, who established the fact of the broadcast, testified from his own knowledge that the broadcast was made. Because Brodhurst was available for full cross-examination, we find no infringement of Speller's right to confrontation. In this case, Officer Brodhurst did not offer testimony to show the truth or accuracy of the out of court description, but testified merely to establish its existence. As one authority has stated: "If the declaration is offered *solely to show that it was uttered*, without regard to the truth or falsity of its content, the declaration is not excluded by the hearsay rule." C. Friend, *The Law of Evidence in Virginia* § 225 (2d ed. 1983). Such declarations are sometimes referred to as "verbal facts" because it is the fact that a declaration was made, and not the declaration's content, which is important. *Id*. Thus, we find no basis for excluding the fact of the broadcast under the hearsay rule, and the trial court did not err in admitting it.

The judgment is reversed and the case is remanded.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.