COURT OF APPEALS OF VIRGINIA


Present:    Judge Humphreys, Senior Judge Willis and Retired Judge Rosenblatt[*]
Argued at Alexandria, Virginia


FRANK S. MULLIN, III
                                                                OPINION BY
v.        Record No. 1601-04-4                  JUDGE ROBERT J. HUMPHREYS
                                                                MARCH 22, 2005
SHIRLEY N. MULLIN



                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                    Randy I. Bellows, Judge

            Laurence J. Tracy for appellant.

            Marcia M. Maddox (Katharine W. McGregor; Law Office of
            Maddox, Cole & Miller, P.C., on brief), for appellee.


        Appellant Frank S. Mullin ("father") appeals from an order directing him to continue

paying child support to appellee Shirley N. Mullin ("mother").  Father contends that the trial

court prematurely found that, because their child, M.M., is severely and permanently disabled,

father should be liable for continuing child support after M.M. graduates from high school.

Father also argues that the trial court abused its discretion in awarding attorney's fees, erred in

admitting an exhibit listing M.M.'s out-of-pocket medical expenses, and erred in ordering father

to reimburse mother for a portion of their children's out-of-pocket medical expenses.  For the

reasons that follow, we affirm, and we also award mother the cost of her attorney's fees for this

appeal.


_____

        [*] Retired Judge Alan E. Rosenblatt took part in the consideration of this case by
designation pursuant to Code § 17.1-400(C).

## I. BACKGROUND

In December 1992, mother and father divorced. The parties' divorce decree ordered father to pay spousal support and child support for their two minor children, M.M. and S.M., and awarded sole custody of the children to mother. On May 25, 2000, the trial court entered a consent order terminating spousal support and increasing the amount of child support for M.M. and S.M. The consent order, made effective June 15, 2000, ordered father to pay $1,600 a month in child support and required father to provide health insurance for the children. The consent order also indicates that mother "shall be responsible for any out of pocket uninsured medical expenses not to exceed $200 per month." Finally, the order provides that child support "shall continue to be paid for any child who is (i) a full-time high school student, (ii) not self-supporting and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of nineteen or graduates from high school, whichever first occurs."

In November 2002, father lost his job and, without obtaining a court order, reduced his child support payments to $800 a month. Father continued to provide health insurance for the children until January 2003. Mother paid for the children's health insurance from February 2003 until October 2003, when she lost her job. After she lost her job, mother continued to provide the children's health insurance through a COBRA plan.

On March 19, 2004, father filed a motion to establish child support arrears and to modify the existing child support arrangement, asserting in his pleading that both parties had lost their jobs and child support arrears were in dispute.

On March 25, 2004, the Virginia Department of Social Services Division of Child Support Enforcement ("DCSE") filed a petition, seeking to suspend father's driver's license based on his failure to pay child support. On April 13, 2004, the DCSE also filed a motion for a rule to show cause, asserting that father "accrued child support arrears of $12,974.00 from June

12, 2000 through March 31, 2004, including interest . . . ." DCSE requested that the court "[e]stablish a payment plan on the arrears," hold father "in civil contempt of Court for his failure to pay child support as ordered by this Court," and "impose a jail sentence."

The trial court entered a rule to show cause against father on April 20, 2004, directing father to appear in court to show "why he should not be held in civil contempt of this Court for his alleged failure to comply fully with the terms of the Consent Order entered by this Court on May 25, 2000."

On April 22, 2004, mother filed a separate motion seeking to increase child support and determine child support arrears. In support of this request, mother alleged that she "regularly incurs uninsured medical expenses for the children well over $200 per month" because "[b]oth children suffer from 'Multiple Hereditary Exostoses.'"[1] In the same motion, mother also requested continuation of child support for M.M. pursuant to Code § 20-124.2(C). Mother noted that M.M. would "attain the age of 18 prior to the scheduled hearing of May 13, 2004," but that he would "continue to be a high school student, residing in his Mother's home while being supported by his parents, until his graduation from high school in June of 2005." Mother also alleged that M.M. "suffers from a debilitating hereditary illness . . . which causes multiple abnormal bone growths, disabling motility problems and chronic, severe pain." Mother concluded that an award of continuing support would be justified under Code § 20-124.2(C) because M.M. "has a chronic and life-long condition which causes him a severe and permanent disability, and he is expected to remain in the Mother's home, unable to live independently or support himself."

---

[1] Mother also suffers from this disease.

In her prayer for relief, mother asked the court to issue a rule to show cause, require father "to immediately satisfy all arrears of child support," "reimburse [] Mother for all of her payments for health care insurance," "reimburse [] Mother for any amount that [she] has paid in excess of her $200 monthly share for uninsured health care expenses for the minor children," recalculate and adjust father's child support obligation, continue father's child support obligation for M.M. "beyond the age of 18 for so long as [M.M.] is eligible as a disabled child," and award mother her attorney's fees and costs.

In response to mother's motion, a second rule to show cause was issued against father on April 27, 2004. The trial court scheduled a hearing on the pending motions and rules to show cause for May 13, 2004.

By the date of the hearing, father owed a total of $14,670 in child support arrears. On the morning of the hearing, however, father tendered $14,670 to the DCSE, and the DCSE dismissed its petition and motion for a rule to show cause. The trial court conducted the scheduled *ore tenus* hearing immediately following father's payment to DCSE.

## A. M.M.'s Physical Disability

According to mother's testimony, M.M. suffers from "multiple hereditary exostosis," a disease that creates large bone growths (or "tumors"), resulting in scarring, fatigue, potential nerve damage, and a decreased ability to process protein and sugar. Because of the disease, M.M. has had eight to nine surgeries, and he presently has at least twelve additional bone tumors in his legs. The tumors in his legs will require, at minimum, four additional surgeries to correct. M.M. also has about ten more tumors in his pelvic area, a "permanent disability" of his right arm, and "[s]mall movements cause him regular pain under his left arm, and that causes his hand to go numb." At present, M.M. is being treated by five different physicians.

- 4 -

Mother testified that M.M. currently attends a "Special Governor's School" at Stafford High School. The Governor's School is "an accelerated course series for teenagers" that provides college-level courses for high school students. M.M., who stopped physically attending school in March 2004, is currently on a "homebound" program administered by the school system. Under this program, a tutor comes to M.M.'s home "two days a week for two hours." Mother testified that M.M. is currently "incapable of going to school" because of his "pain level."

Mother also noted that the Stafford County school system first classified M.M. as a medically disabled student at the beginning of his junior year. Mother testified that his disability rating is "variable" because "some days he can almost write, and some days he can't write at all. Some days he can walk. Some days he can't walk at all." M.M. did not have the qualifications necessary to graduate in the spring of 2004. He will turn nineteen in April of 2005, before his scheduled graduation in the spring of 2005.

## B. Evidentiary Rulings

During the hearing, the trial court admitted into evidence a chart marked as Exhibit 2, which indicates that mother's total cost of providing health insurance for the children from November 2002 through May 2004 equaled $7,715.10. The court also admitted a chart marked as Exhibit 3, which indicates that, excepting her $200 per month obligation, the total out-of-pocket medical expenses incurred by mother between May 25, 2000 and May 2004 equaled $8,500.05. Father did not object to the admission of either of these exhibits.[2]

---

[2] When mother moved to admit the exhibits into evidence, father merely responded "Subject to cross-examination, Your Honor." This response is not equivalent to an objection to the admissibility of the exhibits.

Mother also sought to introduce into evidence Exhibit 9, a one-page exhibit titled "[M.M.]'s recurring monthly uninsured extraordinary medical costs." The exhibit outlines the recurring, out-of-pocket medical costs associated with M.M.'s pain management, including the cost of his medical appointments, allergy shots, pain medications, and trips to the Shriner's hospital in Philadelphia to meet with his surgeons. The figures incorporated into the chart indicate that mother spends approximately $623 every month in out-of-pocket medical expenses for M.M. Although father objected to Exhibit 9 "based [] on lack of foundation and hearsay," the trial court overruled his objection and admitted the exhibit.

The trial court also admitted into evidence Exhibit 10, a chart delineating the attorney's fees incurred by mother. According to Exhibit 10, mother incurred $7,944.50 preparing for the May 13 hearing on the motions and rules to show cause.

## C. The Trial Court's Ruling

By order dated June 10, 2004, the trial court ordered father to pay mother: (1) $7,162 as reimbursement for the health insurance she provided for the children between October 2002 and May 2004,[3] (2) $8,500.10 as reimbursement for the out-of-pocket medical expenses she incurred between May 2000 and May 2004, and (3) $7,547.27 in attorney's fees. The trial court also ordered father to continue paying child support for M.M. after M.M.'s high school graduation, reasoning that M.M. is severely and permanently physically disabled, is unable to live independently and support himself, and resides with a parent. In support of this ruling, the trial court noted that,

> From the description, which is uncontradicted on [M.M.]'s condition, it is a permanent illness. I have heard nothing to suggest that there is a cure for this, or that he is on his way to a cure. He is

---

[3] The trial court subtracted the cost of providing insurance during December 2002 and January 2003 from the $7,715.10 figure provided by mother, reasoning that the children were still covered by father's insurance during that sixty-day period.

afflicted by this as is his mother, which is an indication it doesn't go away when your growth spurt ends. And I do find it to be severe, tumors all over your body that create debilitating pain to require multiple surgeries. If that's not a definition of severe, I don't know what is. So I find both severe and permanent. I don't find it is a mental disability . . . but certainly I see it as a physical disability.

The trial court also found that M.M. was "unable to live independently and support himself," reasoning that, "[g]iven his condition, he can't even go to school for the full day. I certainly don't see how he can live independently and support himself." Accordingly, the court concluded that M.M.'s condition satisfied each of the criteria contained in Code § 20-124.2(C). The trial court also noted that its ruling was not permanent, reasoning that M.M.'s condition "may become more of a manageably chronic condition." The court further observed that, "if [M.M.] goes off to college and lives on his own and is able to work part-time," father would be free "to come back to court and say that there has been a change that should leave the court to reach a different result."

Finally, the court modified the existing child support arrangements, ordering father to pay mother $810 per month for child support and an additional $300 per month to reimburse mother for one-half of the cost of the children's health insurance. The court also ordered that, in the future, the parties should "equally pay for all of the children's health related costs not covered by insurance." Father appeals.

## II. ANALYSIS

On appeal, we view the evidence in the light most favorable to mother, the party prevailing below. Petry v. Petry, 41 Va. App. 782, 785-86, 589 S.E.2d 458, 460 (2003); Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). Thus, we will "discard the evidence of [father] which conflicts, either directly or inferentially, with the evidence presented by [mother] at trial." Petry, 41 Va. App. at 786, 589 S.E.2d at 460.

- 7 -

Also, when a trial court hears evidence at an *ore tenus* hearing, its factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them. Wheeler v. Wheeler, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004); see also Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003) (noting that, on appeal, the trial court's ruling is "peculiarly entitled to respect for [it] saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record" (internal quotations omitted)). Moreover, there is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Brown v. Spotsylvania Dept. of Social Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004).[4]

A. Continuation of Child Support Under Code § 20-124.2(C)

Initially, father argues that the trial court erred in ordering him, pursuant to Code § 20-124.2(C), to continue paying child support for M.M. after M.M. graduates from high school, reasoning that the court's ruling in this regard was "premature and unnecessary." We disagree.[5]

As pertinent here, Code § 20-124.2(C) provides that

> The court may order that support be paid for any child of the
> parties. The court *shall* also order that support will continue to be

---

[4] Mother contends that none of father's arguments on appeal should be considered because father "failed to cite any record citations as to where he preserved any of his four questions presented," as required by Rule 5A:20(c). However, on page 3 of his opening brief, father does cite to various pages in the appendix; he merely identifies them by page and line number (*e.g.*, "P__, L___") rather than using the abbreviation "JA ___." Father's citation to the appendix is sufficient to pass muster under Rule 5A:20(c).

[5] Father does not contend that the trial court erred when it ordered him to continue paying child support for M.M. until M.M. graduates from high school, focusing solely on the award of continuing child support for the period *after* M.M. graduates.

paid for any child over the age of 18 who is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of 19 or graduates from high school, whichever first occurs. The court *may* also order the continuation of support for any child over the age of 18 who is (i) severely and permanently mentally or physically disabled, (ii) unable to live independently and support himself, and (iii) resides in the home of the parent seeking or receiving child support. . . . The court may make such further decree as it shall deem expedient concerning support of the minor children, including an order that any party provide health care coverage.

(Emphases added). Accordingly, this statutory section describes two separate scenarios under which child support may be continued. First, the trial court *must* continue child support for full-time high school students under the age of 19 who live at home and are not self-supporting. Second, the trial court *may* continue child support for severely disabled children over the age of 18 who are unable to live independently and who reside with the parent seeking child support.

Notably, there is no statutory language from which it could be inferred that these two scenarios are mutually exclusive. Rather, it would be entirely consistent with the statutory language to order a continuation of child support under the rationale that *both* of these statutory exceptions are applicable to a given situation. Here, that is precisely what the trial court did. That is, the trial court concluded that M.M. is *both*: (1) a full-time high school student under the age of 19 who is living at home and is not self-supporting, and (2) a severely disabled child over the age of 18 who is unable to live independently and who resides with his mother, the parent seeking a continuation of child support. And, because the trial court's ruling is not plainly wrong or without evidence to support it, see Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994); Young v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986), we affirm.[6]

_____

[6] We also note that, because the trial court was presented with sufficient evidence upon which to base its ruling, the order continuing child support payments for M.M. beyond his high school graduation furthered the interests of justice. That is, had the trial court not entered the

Initially, there is no dispute that M.M. lives with his mother, the parent seeking a continuation of child support. It is similarly undisputed that M.M. turned eighteen on April 24, 2004. Thus, on the date of the hearing, M.M. was "over the age of 18."[7] Moreover, mother provided uncontroverted testimony that M.M. has at least 22 bone tumors, is on six different types of pain medication, and "can't function" when he has received either too much or too little pain medication. Because of his "chronic pain," he has five treating physicians, will need at least four additional surgeries, and has a "permanent disability" of his right arm. Thus, there is ample evidence in the record supporting the trial court's conclusion that M.M.'s condition constitutes a "severe and permanent" physical disability that renders him "unable to live independently and support himself."

Father, however, argues that the evidence was insufficient to support the trial court's ruling, contending that the only evidence that M.M. was physically disabled was "hearsay lay evidence," that mother presented no evidence relating to M.M.'s ability to support himself or to live alone, and that there was no causal evidence linking M.M.'s permanent disability to an inability to support himself or live alone.

Initially, Code § 20-124.2(C) contains no language from which it may be inferred that the fact of a child's "severe and permanent" disability must be established by expert medical testimony. Indeed, "the longstanding Virginia rule is that a witness need not be a medical expert

---

order at this time, the parties would have been forced to return to court after M.M.'s high school graduation, less than a year away, in order to relitigate the same issues then before the court. The trial court's decision to enter the order was therefore not "premature," but rather, saved both parties considerable time and expense.

[7] Cf. Cutshaw v. Cutshaw, 220 Va. 638, 641, 261 S.E.2d 52, 54 (1979) (*per curiam*) (holding that the language "under the age of 18" contained in Code § 20-61 means that the parent's child support obligation ceases to exist "after the child's 18th birthday").

- 10 -

to offer testimony concerning a person's physical condition." Speller v. Commonwealth, 2

Va. App. 437, 441, 345 S.E.2d 542, 545 (1986). Rather,

> "[t]he opinions of lay or nonexpert witnesses who are familiar with
> a person whose physical condition is in question and have had
> opportunity for observing him are competent evidence on issues
> concerning the general health, strength, and the bodily vigor of
> such person, his feebleness or apparent illness, or changes in his
> apparent state of health or physical condition from one time to
> another."

Id. (quoting Pepsi-Cola Bottling Co. v. McCullins, 189 Va. 89, 97, 52 S.E.2d 257, 260 (1949)).

Indisputably, mother is "familiar" with M.M.'s "physical condition," and she has had ample

"opportunity [to] observ[e] him." The fact that mother is a lay witness rather than a medical

expert therefore goes to the weight of her testimony, and not her competency to testify. Cf. Todt

v. Shaw, 223 Va. 123, 127, 286 S.E.2d 211, 213 (1982) (noting that "lay testimony" regarding

the causation of an injury "'is admissible for whatever weight the fact finder may choose to give

it'" (quoting Peterson v. Neme, 222 Va. 477, 483, 281 S.E.2d 869, 872 (1981))); Walrod v.

Matthews, 210 Va. 382, 390, 171 S.E.2d 180, 186 (1969) ("The jury has a right to weigh the

testimony of all the witnesses, experts and otherwise." (internal quotations omitted)).

Accordingly, we conclude that mother's uncontradicted lay witness testimony, which was based

on her own personal observations and experiences, was sufficient for purposes of this statute.

See Speller, 2 Va. App. at 441, 345 S.E.2d at 545 (holding that the trial court's refusal to permit

a mother to testify as to a bout of polio suffered by her child was "clearly wrong" because "her

firsthand observations would establish her competency to testify as a lay witness").

Second, we find no merit in father's argument that mother presented no evidence relating

to M.M.'s ability to support himself. As noted by the trial court, M.M. suffers from chronic and

debilitating pain, rendering him unable to even "go to school for the full day." Thus, there is

ample evidence in the record from which it may be inferred that M.M. cannot "live

- 11 -

independently and support himself." Cf. Rinaldi v. Dumsick, 32 Va. App. 330, 335, 528 S.E.2d 134, 137 (2000) (upholding order continuing child support for disabled child where the mother presented evidence that the child "could not use his left hand, had limited vision in his left eye, and suffers from seizures . . . [that] occur on a weekly basis and have become more frequent over the past couple of years," and where father "presented no contrary [] testimony, medical or otherwise," relating to the child's ability to live independently or support himself).

Third, we disagree with father's contention that mother failed to present any causal evidence linking M.M.'s permanent disability to an inability to support himself or live alone. In Germeck v. Germeck, 34 Va. App. 1, 537 S.E.2d 596 (2000), we noted that "an award of continuing support under the statute requires a finding that the statutory elements are causally linked, i.e., that the child's severe and permanent disability renders [him] unable to live independently and support [him]self." Id. at 8, 537 S.E.2d at 600. However, despite father's argument to the contrary, the trial court here explicitly found a causal link between M.M.'s disability and his inability to support himself or live alone. Specifically, the court noted that "*given [M.M]'s condition*, he can't even go to school for the full day," concluding that M.M. is therefore "unable to live independently and support himself." (Emphasis added). Accordingly, this argument also has no merit.

Because mother presented sufficient evidence to satisfy each of the factors contained in Code § 20-124.2(C), we hold that the trial court did not err in ruling that father's support obligation would continue beyond M.M.'s high school graduation.

### B. Attorney's Fees

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "[T]he key to a proper award of counsel fees . . . [is]

- 12 -

reasonableness under all of the circumstances revealed by the record." Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988); see also Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) ("Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003))).

Father argues that the trial court abused its discretion in awarding attorney's fees, contending that the award of fees "clearly . . . relat[ed] to a contempt proceeding or rule to show cause." Because the DCSE had dismissed its show cause motion, father reasons that "to charge [him] attorney fees is unreasonable and an abuse of discretion."

However, father did not pay his child support arrears until the morning of trial, at which time mother had already prepared for the rule to show cause hearing. There was no evidence indicating that father made any effort to resolve the issue of his child support arrearages before the hearing. And, as noted by the trial court,

> [t]here is no good reason this needed to come down to a contempt proceeding [against the father] or a rule to show cause, because the court order clearly said $1,600, and he wasn't paying $1,600, and he wasn't paying what he should have been paying, and he wasn't covering health insurance. So it's entirely reasonable that we're here . . . . And these attorney fees were largely avoidable.

Moreover, although the trial court awarded attorney's fees on the issue of child support arrearages, the court reduced the final award by 5% to eliminate the expense of requesting a continuation of child support for M.M. Specifically, the court reasoned that "it's different when it comes to [M.M.'s] issue, because I do see that as something for which I will not give attorney fees." The trial court's decision to reduce the amount of attorney's fees indicates that the court

- 13 -

carefully considered the merits of the underlying disputes and only awarded attorney's fees that were incurred in preparing for the contempt and arrearage proceedings.

Considering that father had amassed in excess of $14,000 in child support arrearages over a one and a half year time period, and considering father's failure to take any meaningful steps to resolve the issue in a timely manner, the trial court's decision to award attorney's fees in this situation was reasonable "under all the circumstances." Accordingly, we hold that the trial court did not abuse its discretion in awarding attorney's fees to mother.

## C. Admissibility of Exhibit 9

Father also contends that the trial court erred in admitting Exhibit 9 into evidence, arguing that, because the "claimed expense totals are not supported by bills or receipts," the exhibit was inadmissible hearsay that lacked an adequate foundation. Because we hold that father has failed to adequately present this issue for our consideration, we decline to rule on the merits of this argument.

Rule 5A:20(e) requires that the appellant's opening brief include the "principles of law, the argument, and the authorities relating to each question presented." Father's argument in support of this assignment of error does not meet the requirements of Rule 5A:20(e). Not only does father fail to argue the issue with any specificity, relying instead on a few broad, conclusory assertions, he also fails to provide any citation to controlling legal authority that supports his position. And, as we noted in Buchanan v. Buchanan, 14 Va. App. 53, 415 S.E.2d 237 (1992), "[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Id. at 56, 415 S.E.2d at 239; see also Theismann v. Theismann, 22 Va. App. 557, 572, 471 S.E.2d 809, 816 (declining to address an argument that was inadequately developed in appellant's brief), aff'd en banc, 23 Va. App. 697,

479 S.E.2d 534 (1996); <u>Fitzgerald v. Bass</u>, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*) (noting that it is not this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims").

Accordingly, we decline to address the merits of this assignment of error.

### D. Out-of-Pocket Medical Expenses

Finally, father contends that the trial court erred in ordering him to reimburse mother for both her out-of-pocket medical expenses and the cost of providing health insurance for the children. Father reasons that the out-of-pocket medical expenses were "duplicative of the order to pay the health insurance premiums." Father also argues that, based on the May 2000 consent order, he had "no obligation . . . to be solely responsible for any uncovered medical[] expenses in excess of $200.00 per month."

The record, however, does not support father's argument that the two awards were duplicative. Based on Exhibit 2, the trial court ordered father to reimburse mother for the costs of providing health insurance to the children. Based on Exhibit 3, the trial court also ordered father to reimburse mother for a portion of the monthly out-of-pocket medical expenses she incurred between May 2000 and May 2004. Father did not object to either of these exhibits, did not produce any evidence or otherwise argue that the amounts listed in the exhibits were inaccurate, and did not produce any evidence indicating that the expenses covered in Exhibit 2 were duplicative of the expenses covered in Exhibit 3.

Thus, the trial court's decision to award mother the costs of providing health insurance for the children was entirely separate from its decision to award mother a portion of her out-of-pocket medical expenses. The two awards were based on different bodies of evidence, and father has not identified any specific expenses that he believes are covered by both Exhibit 2

- 15 -

and Exhibit 3.[8]  Moreover, the trial court awarded mother the costs of providing health insurance for the children based on a provision in the consent order that is separate from the provision authorizing the court to award mother a portion of her monthly out-of-pocket medical expenses. Accordingly, father's argument that the two awards are "duplicative" is unsupported by any evidence in the record and, therefore, has no merit.

The record also fails to support father's assertion that he had "no obligation . . . to be solely responsible for any uncovered medical[] expenses in excess of $200.00 per month."  The May 2000 consent order expressly provides that mother "shall be responsible for any out of pocket uninsured medical expenses *not to exceed* $200 per month."  (Emphasis added).  The trial court interpreted this consent order as meaning that mother's liability for out-of-pocket medical expenses was "capped" at $200 per month and that "[father] is responsible for the cost in excess of $200 per month."  We agree.  According to the plain language of the consent order, mother was responsible for the first $200 of out-of-pocket medical expenses, and father was responsible for any amounts expended in excess of $200.  Accordingly, the trial court did not err in ordering father to reimburse mother for the portion of her monthly out-of-pocket medical expenses that exceeded $200.

For these reasons, we hold that the trial court did not err in ordering father to reimburse mother for both the cost of providing health insurance for the children and for a portion of her monthly out-of-pocket medical expenses.

---

[8] Father contends that the cost of providing health insurance was included in the totals for Exhibit 3, but father has not identified any evidence indicating that this is, in fact, true.  Father's unsubstantiated assertion is insufficient to carry his burden of proving that the trial court erred.

E.  <u>Attorney's Fees on Appeal</u>

Mother has requested an award of attorney's fees for the cost of this appeal.  Considering the lack of merit of this appeal and the undeveloped nature of father's brief and arguments, as well as the fact that mother is currently unemployed, in poor health, and caring for two children who both suffer from a severe and debilitating disease, we order father to reimburse mother for the reasonable attorney's fees and costs she incurred for purposes of this appeal.  <u>See generally</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 479 S.E.2d 98 (1996) (noting that attorney's fees are proper on appeal if "the appeal is frivolous or [] other reasons exist for requiring additional payment").  Accordingly, we remand this case for the limited purpose of determining the amount mother should be awarded for the attorney's fees and costs she incurred in this appeal.  <u>See</u> <u>Gottlieb v. Gottlieb</u>, 19 Va. App. 77, 96, 448 S.E.2d 666, 677 (1994) (remanding for limited purpose of determining attorney's fees on appeal).

## III.  CONCLUSION

For these reasons, we affirm the judgment of the trial court.  Moreover, considering the merits of father's arguments to this Court, we award mother the costs and attorney's fees she incurred in this appeal, and we remand to the circuit court for the limited purpose of determining the cost of mother's attorney's fees on appeal.

<u>Affirmed and remanded.</u>