COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia


GALEN JAY MORET

v.        Record No. 1286-17-3

KAREN ELIZABETH MORET

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
MAY 8, 2018


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Sage B. Johnson, Judge

John M. Lamie (Robert M. Galumbeck; Browning, Lamie &
Gifford, P.C.; Galumbeck & Kegley, on briefs), for appellant.

Faith Dillow Esposito for appellee.


Galen Jay Moret ("appellant") appeals the decision of the Circuit Court of Washington

County ("trial court"), asserting that the trial court erred by (1) declining to reconsider his child

support arrearages retroactive to 2008; (2) awarding $1,000 per month in spousal support to

Karen Elizabeth Moret ("appellee"); and (3) awarding an equitable distribution credit of

$17,704.59 to appellee.  For the reasons stated below, we will affirm the trial court.

BACKGROUND

The parties were married for approximately 20 years before appellee filed a complaint for

divorce in September 2006.  In May 2007, the trial court entered a *pendente lite* order requiring

appellant to pay appellee spousal and child support at $2,250 each per month.  For reasons

irrelevant to this appeal, the divorce case lagged for several years in the trial court and did not

become final until July 2017.

_____

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Appellant filed motions to modify support in August 2008 and October 2008. On January 7, 2009, the trial court entered a consent order that temporarily modified the *pendente lite* order and expressly stated that the modification was "without prejudice" to appellant's pending support motions. No hearing occurred on the motions at that time. In February 2010, appellant filed another motion to modify support and after another substantial delay, the trial court entered an order denying the motion on March 8, 2011. The trial court refused to modify the conditions of support that had been memorialized in the January 2009 order. On August 2, 2012, appellant filed yet another motion to modify support which gives rise to the issues in this appeal.

In January 2007, the parties had jointly purchased a townhouse for $168,000 while they attempted to effectuate the sale of the marital home. Ultimately the marital home sold in October 2007 for approximately $140,000. Each party then took $33,000 in proceeds from the sale and put $66,000 toward the purchase of the townhouse. At that point, appellant ceased cohabitation with appellee and moved to another property in Washington County that the parties had also jointly purchased. That property had cost $542,000 and appellant spent an additional $350,000 in expenditures on the home itself, financing the costs through loans obtained from Highlands Union Bank. The parties estimated they had approximately $677,000 in additional marital debt at the time of the separation. While the divorce proceedings were pending in May 2007, the trial court entered an order prohibiting both parties from disposing of or otherwise encumbering any marital assets without the express consent of the other.

Also in 2007, appellant's trucking business began to steadily decline. Appellant's gross income in 2007 was $38,967 and fluctuated during the next five years, cratering to $14,210 in 2013. Appellant had refused to sell the business and engage full-time employment in another position, simply remarking "I don't give up." Appellant currently only drives his truck part-time

due to his blood pressure condition, which prohibits him from working longer hours. Appellant's inability to drive full-time is a consequence of not taking his medication, which appellant decided "wasn't working." Appellant testified that his monthly expenses fluctuated between $1,000 and $1,200. Appellant also obtained a realtor's license but has not devoted significant effort to that endeavor thus far. His financial problems became so severe that appellant eventually filed for bankruptcy in April 2012; his estimated income was at that point $2,408 per month. Appellant began selling off marital property in an attempt to pay down some of the parties' debt. The testimony at trial centered around a 2004 Harley Davidson motorcycle, a John Deere tractor, a Ford tractor, a Wilson tractor, a Dutchman camper, and cattle. Appellant had valued these items in his bank loan application at $91,988.

Appellee has little job experience, previously working primarily in administrative roles including at appellant's business, and has no immediate source of income. She recently obtained a nursing degree from Virginia Highlands Community College. Each month, appellee receives a substantial amount of financial assistance from her parents. She testified that her parents provide her with grocery money and often pay other bills as well, in addition to financing her mortgage payment in full each month. Appellee could not testify as to the current monthly amount owed.

After hearing evidence, the trial court declined to re-calculate child support arrearages to 2008, ordered appellant to pay $1,000 per month in spousal support to appellee, and awarded another $17,704.59 to appellee after determining that appellant wasted certain marital assets. This appeal followed.

ANALYSIS

I. *Child Support Arrearages*

In his first assignment of error, appellant asserts that the trial court erred in declining to re-calculate child support arrearages retroactive to July 2008. We disagree.

This assignment of error concerns a question of law that the Court reviews *de novo*. Napper v. ABM Janitorial Servs. – Mid Atl., Inc., 284 Va. 55, 61, 726 S.E.2d 313, 316 (2012) (citing Westgate at Williamsburg Condo Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005)).

In its letter opinion, the trial court ruled that appellant owed $76,210.88 in arrearages to appellee at the time he filed the motion to modify support in August 2012. On appeal, appellant asserts that arrearages subsequent to August 2012 should not be added to the total amount. The trial court had directed that the Department of Child Support Enforcement ("DCSE") re-calculate the arrearages based on the evidence presented in October 2016 pertaining to the parties' income, respective earning capacities, and the living situations of the parties' children. DCSE then assessed the total amount of arrearages at $172,282.03, a sum that includes the $76,210.88 prior to August 2012 and the new amounts incurred after August 2012. It is noted that in her brief, appellee explicitly stated that she "will concede and accept the number as set forth . . . at $76,210.93." That aside, the Court will address appellant's argument that arrearages should be re-calculated *back* to 2008 because his prior motions to modify support were purportedly never ruled upon. We disagree with appellant's contention.

Appellant contends that because the January 2009 order only temporarily modified the original *pendente lite* order and further stated it was "without prejudice" to any pending motions, then the January 2009 order cannot now be considered a binding order because his motions were pending at that time. We find appellant's argument regarding the January 2009 order meritless, because in its March 2011 order, the trial court explicitly stated that it had considered all of appellant's pending motions, writing that "no change of circumstances exists to alter the order of the [trial court] entered on January 7, 2009, and [appellant's] motion to amend said order is denied."

Rule 1:1 of the Rules of the Supreme Court provides that "[a]ll . . . orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Once the March 2011 order became final after 21 days, all pending motions filed by appellant were resolved. At that point, the January 2009 order became the sole authority for both the child and spousal support. Moreover, the trial court further clarified the posture of this issue when it wrote in its May 2017 opinion letter that the March 2011 order "resolved all motions related to spousal support that were filed with the [trial court] before entry of the March 8, 2011 order."

Accordingly, the trial court could only properly consider appellant's alleged new change of circumstances within the August 2012 motion, and did not err in directing DCSE to calculate additional arrearages. However, because appellee conceded this issue on brief and accepted an award of the pre-2012 arrearages in the amount of $76,210.88, that is the amount the Court will resolve.

## II. *Spousal Support*

In appellant's second assignment of error, he contends that the trial court erred in awarding $1,000 per month in spousal support to appellee. We disagree.

"In determining spousal support, a trial court has broad discretion and '[this Court] will not interfere with such discretion, unless it is clear that some injustice has been done.'" Holmes v. Holmes, 7 Va. App. 472, 483, 375 S.E.2d 387, 394 (1988) (quoting Morris v. Morris, 3 Va. App. 303, 309, 349 S.E.2d 661, 664 (1986)). However, "[a]lthough the decision to award spousal support rests within the trial court's discretion, 'such discretion is not absolute and is subject to review for abuse.'" Moreno v. Moreno, 24 Va. App. 190, 194, 480 S.E.2d 792, 794 (1997) (quoting L.C.S. v. S.A.S., 19 Va. App. 709, 714, 453 S.E.2d 580, 583 (1995)). "Under familiar principles we view [the] evidence and all reasonable inferences in the light most

favorable to the prevailing party below." Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992) (quoting Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988)) (alteration in original).

"Code [§] 20-107.1 provides that, in determining spousal support, the trial court shall consider 'the earning capacity, obligations, needs and financial resources of the parties.'" Frazer v. Frazer, 23 Va. App. 358, 377, 477 S.E.2d 290, 299 (1996). Appellant asserts that it was improper for the trial court to rely on the estimated future income amount that appellant listed in his bankruptcy petition-approximately $28,894. When that number is divided into monthly amounts, it calculates to approximately $2,407.83 per month.[1] Based on our standard of review, we conclude that the trial court did not err in awarding $1,000 in support because it based its decision on the statutory factors within Code § 20-107(E).

During appellant's testimony and the testimony of the CPA who reviewed appellant's business and personal financial records, the trial court considered a somewhat convoluted and meandering path of evidence regarding appellant's past income and the effect of the downturn of his business on his potential future income. In this regard, appellant pays $750 in rent each month and his total monthly living expenses are about $1,200. When that amount is reconciled with appellant's own estimated future monthly income of $2,407.83, appellant has approximately $1,207 remaining in additional disposable income.

Appellee testified that her monthly expenses are significant – her bills add up to approximately $600 per month, not including her monthly mortgage payment. Appellee's parents currently pay her mortgage and have been doing so since approximately 2007 due to

---

[1] The trial court concluded in its May 12, 2017 opinion letter that appellant's monthly income would be $3,273. Appellant is correct in asserting that this amount is in error, because an amount of $3,273 per month equals an annual income of $39,276, much higher than the estimated number of $28,894 within the petition and accepted by the trial court. However, even with this miscalculation, we still cannot conclude that the trial court abused its discretion.

appellee's unstable financial situation. Appellee could not even testify as to the actual mortgage amount because her parents have long since fully assumed that responsibility.

During the parties' marriage, appellee was a stay-at-home mother and relinquished her previous career in which she essentially worked as an office assistant at various businesses. Appellee did obtain a nursing degree from Virginia Highlands Community College but the trial court did not find that she has imminent potential employment from which to obtain a source of income. Thus, appellee requires an appropriate amount in spousal support to cover her monthly expenses.

In essence, appellant's argument is that the trial court erred in concluding that he has a greater ability to achieve income in the future than appellee. However, this argument ignores the reality that the trial court relied upon *appellant's own estimation* of his future income, contained within his bankruptcy petition, in making its conclusion. Due to the relatively unclear nature of much of the testimony, the trial court found it necessary to rely on other documents in evidence to establish appellant's income.

The trial court further noted that appellant owns his own trucking business and has a realtor's license. Appellant argues that his trucking business has all but failed and that he has not generated any momentum with his realty business. However, appellant still hauls livestock through his business, and he owns a truck. Appellant testified that currently he only drives his truck part-time because of his medical issues, but he then admitted that those issues have persisted because he made the unilateral decision to cease taking his medication without consulting his physicians. Clearly, the trial court was not inclined to allow appellant to use the excuse of an inability to work full-time when that inability is due to his own actions. Considering that, the trial court wrote in its May 2017 letter opinion that it believed appellant had "underutilized" the business during the parties' separation.

Although appellant's business has declined in profit in the past decade, it still operates on a regular basis, and he possesses another source of potential income via his realtor's license. "Although 'earning capacity' necessarily includes actual earnings, it is a broader concept that allows the trial court to consider more than actual earnings." Frazer, 23 Va. App. at 378, 477 S.E.2d at 300. Thus, the trial court did not err by determining that appellant is capable of producing income.

Viewing the evidence in totality, this Court finds that the trial court did not err in awarding $1,000 per month in spousal support to appellee, and although we cannot identify the exact metric used by the trial court in crafting the support amount, all the Court need ensure on appeal is whether the trial court properly considered the statutory factors and did not abuse its discretion. The trial court found that appellant has a long-standing business that he is fully capable of operating and can work more hours than he currently does and that he has a realtor's license. Conversely, appellee has significant monthly expenses, does not have any meaningful source of income in her immediate future, and has received substantial financial assistance from her parents for an extended period of time. Finally, appellant's own estimation of his future income within his bankruptcy petition establishes that he has or will have the monthly assets sufficient to pay $1,000 per month to appellee. See Barker v. Barker, 27 Va. App. 519, 528, 500 S.E.2d 240, 244 (1998) ("[t]he relevant time period [for a spousal support award] includes the immediate past, *as well as the 'immediate or reasonably foreseeable future'*" (citing Stubblebine v. Stubblebine, 22 Va. App. 703, 709, 473 S.E.2d 72, 75 (1996), and quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990))) (emphasis added); see also Holmes, 7 Va. App. at 484, 375 S.E.2d at 394 (finding that a trial court acted within its authority when crafting an award that did "not place undue hardship on the husband" and that met the wife's needs).

For those reasons, we conclude that the trial court did not abuse its discretion in awarding $1,000 per month in spousal support to appellee.

## III. *Equitable Distribution*

Appellant alleges in his third assignment of error that the trial court improperly awarded a credit to appellee based on appellant's sale of marital assets in violation of court orders. We disagree.

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan, 10 Va. App. at 732, 396 S.E.2d at 678. "If [a] trial court ignores the applicable law for the evidence presented by the parties, thus abusing its discretion[,] . . . then this Court will reverse that court's equitable distribution award." McIlwain v. McIlwain, 52 Va. App. 644, 657, 666 S.E.2d 538, 545 (2008) (citing Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000)). "When a trial court has considered the statutory factors, this Court will not reverse that court's ruling unless the record indicates that the trial court abused its discretion." Id. at 650-51, 666 S.E.2d at 542 (citing Ranney v. Ranney, 45 Va. App. 17, 47, 608 S.E.2d 485, 499-500 (2005)).

Code § 20-107.3(E)(10) explicitly empowers a trial court to consider "[t]he use or expenditure of marital property by either of the parties for a non-marital separate purpose *or the dissipation of such funds*, when such was done . . . after the last separation of the parties." (Emphasis added). "Dissipation normally involves a 'deliberate waste of marital assets,' squandering of marital money, or use of marital assets for 'improper purposes.'" McIlwain, 52 Va. App. at 654 n.5, 666 S.E.2d at 543 n.5 (quoting Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992)). "[T]he burden is on the party who last had the funds to establish . . . that the funds were used for living expenses or some other proper purpose. If the party is

unable to offer sufficient proof, the [trial] court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result." Clements v. Clements, 10 Va. App. 580, 588, 397 S.E.2d 257, 261 (1990).

At trial, a significant amount of testimony was presented about appellant's sale of multiple items of marital property despite the existence of a court order prohibiting such conduct. Appellant did not dispute that he sold marital property but attempted to justify his actions by pointing to the parties' staggering marital debt. Appellant did not present any evidence to rebut the trial court's finding that he had wasted marital assets.

Specifically, the trial court found that appellant had improperly disposed of the 2004 Harley Davidson motorcycle, a John Deere tractor, a Ford tractor, a Wilson tractor, a Dutchman camper, and cattle. The Court finds no reason to disturb the trial court's factual determinations that these items were sold in violation of its May 2007 order and in relying on appellant's loan application to value the items.

Appellant had valued the items in his bank loan application at $91,988 in total, and the trial court relied upon those amounts in ruling that appellee was entitled to an equal one-half portion of the sum. The testimony established that appellant sold these items for lesser amounts than the value that he had estimated within his loan application; thus the trial court correctly determined that "[appellant] failed to realize the best price for personal property upon sale, resulting in a significant wasting of marital assets."

In his testimony, appellant admitted that to facilitate the sale of the Harley Davidson, he agreed with the bank to a sale price of $8,100, an amount far less than its estimated retail value of $16,150. The John Deere tractor had an estimated value of $34,550 but appellant sold it for $20,000. In his brief, appellant argues that the sale of the assets "were 'arms-length' transactions with willing buyers and a motivated seller who had to realize as much money as possible from

the assets to pay his obligation" to the bank and that the trial court erred in considering those circumstances. However, appellant's assertion ignores the linchpin of the problem with his actions, which was his failure to receive approval from appellee before initiating the sale of these marital assets.

Appellant asserted that the trial court "failed to consider the marital debt" pursuant to Code § 20-107.3(A), which provides that "[t]he [trial] court shall determine the amount of any such debt as of the date of the last separation of the parties . . . and the extent to which such debt has increased or decreased." Appellant then argued that "[a]s a result, the trial court's evaluation of the entire value of marital assets . . . was plain error." However, appellant did not explain how an alleged incorrect determination of the amount of debt has any bearing on whether he committed waste, even if it was his actions that caused the debt to decrease.

Appellant further defended his actions on the grounds that he was simply unaware of the May 2007 court order specifying that neither party could dispose of any marital assets without written consent from the other party. That argument carries no weight whatsoever.

The trial court ruled that appellee should receive a credit of half the fair market value of the sold items, which equals $45,994. Following adjustments to that sum to account for credits to appellant, the trial court awarded appellee a net equitable distribution of $17,604.59. On appeal, we cannot conclude that the trial court erred because appellant provided insufficient evidence to rebut the trial court's finding of waste. See Clements, 10 Va. App. at 588, 397 S.E.2d at 261. Although the sales do not appear to be illegitimate, that is not a mitigating factor under Code § 20-107.3(E)(10) that either the trial court or this Court must consider, thus appellant's reliance on his alleged good faith business dealings carries no weight.

The trial court then considered the distribution of the parties' IRA accounts, which appellant does not dispute, ruling that each party was entitled to half of the accounts and

- 11 -

awarding a credit to appellee of $5,330.50. The trial court then awarded appellee half of the value of the 2006 Dutchman camper, valued at $12,000, and half of the parties' checking account when they separated, which totaled $15,615.36.

Additionally, the trial court found that appellee owed appellant for medical and other expenses pertaining to one of the parties' daughters and ruled that appellee must pay $14,527.59 to appellant, representing her 40% share of those expenses as previously agreed upon. Appellant argued that the trial court based its calculation on a lower total sum than the evidence established. Specifically, he contended that his exhibits demonstrated that the amount was $65,689.17, but the trial court found the amount to be $36,318.98. Again, pursuant to our standard of review, we find no error in the trial court's ruling. As appellee pointed out, appellant's exhibit purportedly proving that the total was $65,689.17 was a self-generated tabulation of amounts accompanied by no corroborating documentation, such as bills or invoices, that could have substantiated appellant's asserted sum. The trial court did not commit error by declining to give credence to the exhibit. See Mayer v. Corso-Mayer, 62 Va. App. 713, 728, 753 S.E.2d 263, 270 (2014) (noting that "there is a presumption on appeal that the trial court thoroughly weighed all the evidence" (quoting Mullin v. Mullin, 45 Va. App. 289, 299-300, 610 S.E.2d 331, 336 (2005))). Moreover, the March 2011 order required appellant to produce copies of any bills for such expenses to appellee for verification purposes *before* she was required to compensate him. Here, the trial court heard testimony from multiple witnesses and considered the exhibits tendered by the parties. The trial court determined that appellant did not present sufficient evidence to substantiate an amount of $65,689.17, and pursuant to our standard of review, we must defer to that finding.

In totality, the trial court's calculations came out to a net equitable distribution to appellee in the amount of $17,604.59. Under our standard of review, this Court sees no reason to

reject the trial court's factual determinations that it reached based on the evidence presented at trial. Accordingly, because the trial court's ruling was not plainly wrong or without evidence to support it, its judgment cannot be disturbed on appeal.

CONCLUSION

The trial court did not err in declining to re-calculate appellant's child support arrearages retroactive to 2008 and acted within its authority when it directed DCSE to determine an updated balance up to the present. However, appellee accepted the pre-2012 sum of $76,210.93 on brief. Additionally, the trial court did not err in awarding $1,000 per month in spousal support to appellee because the evidence established that appellant is capable of paying that amount and appellee's financial needs are significant. Finally, the trial court did not err in awarding an equitable distribution credit to appellee of $17,604.59 because its findings that appellant committed waste were supported by evidence that appellant did not convincingly rebut.

Affirmed.