COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Richmond, Virginia


S. DAVID McILWAIN

                                                        OPINION BY
v.        Record No. 2682-07-2              JUDGE RANDOLPH A. BEALES
                                                     SEPTEMBER 16, 2008

SUSAN BLAIR PENICK McILWAIN


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                          John Richard Alderman, Judge

          David M. Branch for appellant.

          Brian H. Jones (Ann Brakke Campfield; Barnes & Diehl, P.C., on
          brief), for appellee.


        S. David McIlwain (husband) appeals from a final decree granting a divorce to Susan

Blair Penick McIlwain (wife).  He asks this Court to determine whether the trial court erred in

(1) awarding to wife a monetary sum equal to half of the fair market rental value of the marital

home as part of the overall equitable distribution of the marital property, (2) finding the

receivables from loans to two companies were marital assets and distributing them accordingly,

and (3) awarding wife credit for tax payments that she made with marital funds.[1]  We find the

trial court did not err as to Issues 1 and 2.  However, based on this record, we reverse and

remand the trial court's award to wife regarding the amount of credit that she received for

making tax payments.

_____
        [1] Husband listed five questions presented in his brief.  We have consolidated two of the
five questions, as they both addressed the loans to the companies.  In his reply brief, husband
withdrew the remaining question presented, which dealt with $44,000 withdrawn from a marital
account.

I.  Rental Value of Marital Home

Husband and wife married in 1988.  According to wife, she performed most of the household duties, including cooking, cleaning, and yard work.  Husband spent most of his time "on the computer."

Husband generally had no income during the marriage.  In 1996 he began to receive an income from a trust, amounting to approximately $8,000 annually.  Husband also owned some real estate, but the evidence at trial suggested that these properties did not net any significant rental income.  He also owned two businesses during the marriage, but these companies produced little or no income for the couple.

While husband earned little income during the marriage, his irresponsibility with the family's income taxes created significant marital debt.  Although he took responsibility for filing their federal and state income tax returns, for several years husband did not enclose a check for the taxes that were owed, although wife believed he was paying the taxes.  Finally, in 1999, wife discovered the problem.  She then began filing her federal income tax return separately because husband "would not finish the '99 taxes" and because husband "wasn't paying any taxes."[2]

The parties had saved money from the sale of various parcels of real estate to use towards the purchase of a new home.  They kept this money in an account at Crestar Bank.  They used some of the money to reduce the income tax debt that they owed to the federal government, once wife realized that they had not been paying the taxes.  However, at various times prior to December 2000, husband also made large withdrawals from this Crestar account and loaned that money to his two companies, without wife's knowledge or consent.  Although their marriage had problems prior to this, when wife discovered the withdrawals, the problems became critical.

---

[2] By March 2004, husband still had not filed his tax returns for 1999 through 2003.  At a hearing in October 2005, husband admitted that he still had not filed either personal or corporate tax returns for 2003 or 2004.

When wife decided to go on vacation with her family and asked husband to stay at home, he threatened to "leave [her] furniture outside" if she went without him. At that point, she agreed to move out of the home when she returned from the vacation. The parties then separated on August 1, 2001.

Husband remained in the marital home, which was jointly titled, until entry of the final decree in 2007. At the time of their separation, the home was owned outright by the parties, so husband did not have to make mortgage payments on the house. He changed the deadbolt locks on the doors and insisted that wife come to the home only with prior notice to him and only while he was there. Given husband's actions, wife was essentially pushed out of the marital home.

Wife rented a separate residence and later purchased a house using separate funds. The parties agree that wife did not use the marital home after the separation. The trial court found that husband had lived in the home "at virtually no cost since August 1, 2001, while [wife] has had to pay for housing since the separation."

As a result of husband's failure to send a payment with the income tax returns, the parties owed a substantial amount of federal taxes, increased by interest and late payment fees, when they separated. They were still paying taxes owed as far back as 1996. Wife continued to pay off the parties' tax debt after their separation, using her separate income and some marital funds. Husband made one minor payment toward this marital tax debt after the parties separated.

Based on all this evidence, the trial court found wife "was the actual and princip[al] income earner during the marriage, and she bore the burden of [husband's] negative contributions, i.e. his financial contribution to the marriage was to create debt or financial liabilities (negative income)." The court also found, "The [wife] has had to bear a substantially disproportionate financial burden following the separation."

At trial, wife requested that the court credit her with one-half of the fair market rental value[3] of the marital home, as part of the overall distribution of the parties' marital property. The trial court included this amount in its overall division of the marital estate, explaining:

> [Wife] seeks remedy under Va. Code 20-107.3, not under the accounting statute Va. Code 8.01-31.
>
> The Court took into consideration all of the factors set forth in Va. Code 20-107.3(E)(1-11), including monetary and nonmonetary contributions by each spouse to the marriage in determining the equitable distribution. Specifically, Va. Code 20-107.3(E)(11) calls upon this Court to take into consideration such factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.
>
> [Husband] solely has benefited from exclusive occupation of the marital residence at virtually no cost since August 1, 2001, while [wife] has had to pay for housing since the separation. [Wife] has had to bear a substantially disproportionate financial burden following the separation.

In its overall equitable distribution award, the trial court included in the calculation of wife's portion of that award a figure of $19,725.62 – the sum equal to half of the fair market rental value of the home from August 1, 2001 through March 31, 2007, based on the rental value provided by husband's expert. The trial court clearly stated that it was not using the accounting statute, Code § 8.01-31, to do so, but rather was doing so out of fairness after considering all of the factors in the equitable distribution statute, Code § 20-107.3(E).

---

[3] Husband does not question on appeal the particular amount of the credit (half of the fair market rental value of the home) used by the trial court as part of the calculations for the overall equitable distribution. Instead, he questions the court's authority to even consider his five-plus years' use of the marital home during the pendency of the divorce when deciding the appropriate division of the marital property. At trial, husband presented evidence from an expert on the fair market rental value of the property, and the trial court actually used that expert's testimony to calculate the final amount of the sum awarded to wife as part of the overall equitable distribution of the property. Husband did not present the trial court with any other suggestion for valuing his use of the marital home.

On appeal, husband argues that, under the decisions of this Court, a spouse cannot be credited with the fair market rental value of marital property from the date of separation. He contends that such a credit can begin no earlier than the date of the final decree of divorce. Given the relevant statute and case law, the particular facts in this case, and the appropriate standard of review, however, we cannot find that the trial court erred.

The trial court, in reaching its decision, took into account husband's exclusive use of the marital home in the context of a long-pending divorce and equitable distribution under Code § 20-107.3. That code section requires that a trial court consider several factors when determining the equitable division of marital property:

> E. The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of the following factors:
>
> 1. The contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> 2. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;
>
> 3. The duration of the marriage;
>
> 4. The ages and physical and mental condition of the parties;
>
> 5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivisions (1), (3) or (6) of § 20-91 or § 20-95;
>
> 6. How and when specific items of such marital property were acquired;
>
> 7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;
>
> 8. The liquid or nonliquid character of all marital property;

9. The tax consequences to each party;

10. The use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties; and

11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Code § 20-107.3. The trial court here explicitly stated that all of these factors were considered in determining the division of the marital property, including a means to provide wife with a remedy for husband's exclusive use of the marital home during the five and a half years that the divorce was pending. When a trial court has considered the statutory factors, this Court will not reverse that court's ruling unless the record indicates that the trial court abused its discretion. Ranney v. Ranney, 45 Va. App. 17, 47, 608 S.E.2d 485, 499-500 (2005).

The evidence in this record is sufficient to support the trial court's findings. Wife was the only person who earned a regular salary during the marriage, and she made most of the nonmonetary contributions to the marriage. Husband, on the other hand, unnecessarily increased the family's debt by refusing to pay the taxes in a timely manner, and he made very few nonmonetary contributions to the marriage. He also loaned huge sums of money to his companies without wife's knowledge, money that the parties had agreed would be used to pay their past-due taxes or to make a down payment on a new home. Once the parties separated, wife made substantial progress toward the elimination of the tax debt, using both marital and non-marital funds, even though she also had the added expense of rent or a mortgage. Husband made de minimus payments toward this marital debt, even though he lived in the marital home and did not have to pay rent or a mortgage. We cannot find that the trial court abused its discretion in its factual findings under subsection E or in the weight it gave to particular factors. See id.

Husband, in fact, does not argue that the trial court misapplied the statutory factors. Instead, he argues that several decisions of this Court preclude consideration in equitable distribution of his exclusive use of the marital home during the pendency of the divorce. However, Code § 20-107.3 does not prevent a trial court from considering one spouse's exclusive possession of the marital home during the divorce. The trial court here determined that the use of the home, which was retained solely by husband and lost to wife during the pendency of the divorce, was important to consider under factor 11 of Code § 20-107.3, "other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Nevertheless, husband argues that Gaynor v. Hird, 15 Va. App. 379, 424 S.E.2d 240 (1992), Traylor v. Traylor, 19 Va. App. 761, 454 S.E.2d 744 (1995), and Anderson v. Anderson, 42 Va. App. 643, 593 S.E.2d 824 (2004), support his position that a trial court abuses its discretion when it considers one party's use of a jointly-owned, marital home before the granting of a divorce, no matter what the circumstances. We disagree with this interpretation of these cases.

In Gaynor, 15 Va. App. at 380, 424 S.E.2d at 241, the parties were divorced in September 1985, after which they continued to own the marital home as tenants in common. Mr. Hird continued to live in the home to the exclusion of his former wife, Mrs. Gaynor. Id. As part of a partition action in 1991, Mrs. Gaynor asked that she be awarded one-half of the fair market rental value of the home, starting October 1, 1985, and the trial court denied her request. Id. at 381, 424 S.E.2d at 242. This Court reversed the trial court, finding Mrs. Gaynor's request fell under Code § 8.01-31 and, therefore, she was entitled to an accounting and to credit for the fair market rental value of the commonly owned property from the date that they had become tenants in common, i.e., the entry date of their final decree of divorce. Id. at 382, 424 S.E.2d at 242.

Gaynor was not a divorce action. The parties' divorce had been finalized many years earlier. When Mrs. Gaynor requested half the fair market value of the property she owned with Mr. Hird, the equitable distribution statutes no longer applied. The fact that the two parties in Gaynor were previously married was relevant only to explain how they became tenants in common. That fact had no relevance to the legal analysis. Gaynor raised no issue regarding Mr. Hird's possession of the home prior to their divorce.

In contrast, Anderson, 42 Va. App. 643, 593 S.E.2d 824, arose in the context of a divorce action. There, this Court affirmed a credit to Mrs. Anderson for the rental value of the marital home, based on her husband's exclusive possession of the home during the pendency of their divorce. The Court noted, "[N]othing in the equitable distribution statute or cases cited by appellant prevents a trial court from considering rental income or fair rental value and associated expenses of the marital home, conceded to be marital property, in fashioning a fair and just award." Id. at 649, 593 S.E.2d at 827.

Husband attempts to distinguish Anderson by arguing that he did not receive actual rental income, whereas Mr. Anderson actually leased portions of the marital property and received rental income. The Court in Anderson, however, noted that although Mr. Anderson had rented portions of the property, he also continued to live there. Id. at 646, 593 S.E.2d at 825. The Court then approved the credit to Mrs. Anderson, which was based on the total rental value of the *entire* property, although the entire property was never rented out, from the time of the separation to the entry of the divorce, rather than using the actual amount of the rents collected by Mr. Anderson or the fair market value of only that portion of the property that Mr. Anderson rented to other people. Id. Therefore, Anderson does not support husband's position here that credits based on rental value must be based on collected rents.

- 8 -

Husband also cites Traylor, 19 Va. App. 761, 454 S.E.2d 744, in support of his argument. In that case, this Court cited Gaynor and Code § 8.01-31, but did not discuss the equitable distribution statute. Id. at 765, 454 S.E.2d at 747. Here, wife asked the trial court to apply Code § 20-107.3 rather than the accounting statute, and the trial court applied the equitable distribution statute.[4] As the parties in Traylor did not ask this Court to address the application of Code § 20-107.3, that case does not apply here.

In addition, the equitable distribution statute has been amended since Traylor. Code § 20-107.3(E)(10) now allows the court to consider "[t]he *use* or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done . . . after the last separation of the parties."[5] (Emphasis added.) This subsection was added to the equitable distribution statute in 2004, after our opinion in Traylor. See 2004 Va. Acts, ch. 654.

---

[4] Traylor can be distinguished factually. The Traylors' home was mortgaged, and Mr. Traylor paid the mortgage while the divorce was pending, while Mrs. Traylor apparently lived with her parents for a length of time. Traylor v. Traylor, No. 0120-91-2 (Va. Ct. App. Dec. 17, 1991) (*inter alia*, reversing and remanding the initial equitable distribution award). Here, husband lived in the marital home without a mortgage, while wife was required to rent and then purchase a new place to live.

[5] Wife did not argue, and the trial court did not find, that husband dissipated a marital asset. Dissipation normally involves a "deliberate waste of marital assets," squandering of marital money, or use of marital assets "for improper purposes." Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992) (finding Mrs. Amburn's use of a line of credit, established prior to the parties' separation, was not dissipation of a marital asset, especially as Mr. Amburn had refused to comply with the parties' written agreement that he would pay all the tuition and living expenses for Mrs. Amburn's daughter). If a party dissipates a marital asset, then "the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result," in effect adding the dissipated asset back into the marital estate. Clements v. Clements, 10 Va. App. 580, 587, 397 S.E.2d 257, 261 (1990). Instead of dissipation of the value of marital property, this case involves the equities that should be balanced in dividing the existing marital property when one spouse receives all of the benefit of a marital asset for a number of years, without any attending financial obligation, to the exclusion of the other spouse, who has effectively been denied use of the marital asset by the other spouse and who must expend funds because she receives no benefit from the asset.

Here, after the parties' last separation, husband essentially used the marital home as his own separate residence,[6] would not allow wife to remain in the home, changed the locks, and refused to accept responsibility for the marital tax problems that he created by refusing to make timely payments to the IRS as the taxes came due. Wife, in contrast, expended her separate funds to pay rent and, at the same time, used her separate funds to reduce the marital tax debt that husband had refused to pay. While the trial court gave wife credit for her separate payments of the marital tax debt, see *infra*, the fact that wife had to address this problem, a problem of husband's creation, for years after their separation, limiting her ability to use her separate funds during that time, created additional equity concerns.

Other states' courts have found it appropriate to consider the fair market rental value of the marital home in the overall equitable distribution of the marital property, especially where one spouse ousts the other spouse out of the home, which effectively happened here.

> Where one spouse has sole use of the marital home during the pendency of the divorce action, some states give the trial court discretion to credit the nonoccupying spouse with a fair rent for the occupying spouse's use of the premises. This credit is generally not awarded when exclusive use was awarded by the court as an incident of spousal or child support.
>
> If rental value is deducted and the home in question is jointly titled, the deduction should cover only the rental of the nonoccupying spouse's interest. Thus, only half of the rental of for [sic] the entire premises should be deducted. Where a jointly owned home is occupied by one spouse alone during the divorce proceedings, but the nonoccupying spouse has not been formally *ousted* from possession, an award of rent is not required.
>
> Of course, an [sic] rental credit is especially appropriate when one spouse alone has been collecting rent during separation for leasing a marital asset to third parties.

_____

[6] For example, by threatening to put wife's furniture out in the yard if he could not accompany her and her family on a vacation, at a time when the couple was having problems due to husband's mismanagement of their taxes and his loans of marital funds to his companies, husband effectively claimed the home as his exclusive possession.

- 10 -

2 Brett R. Turner, Equitable Distribution of Property 450-52 (3d ed. 2005) (emphasis in original).

We find the trial court did not abuse its discretion in crafting the overall equitable distribution of the parties' marital property by including in the division of that property an amount to wife equal to one-half of the fair market rental value of the marital house from the date that the McIlwains separated. The trial court did *not* find that awarding such an amount was *required*, but instead considered the factors in Code § 20-107.3(E), weighed them accordingly, and included this amount as part of the overall equitable distribution of the marital property. Given the standard of appellate review required here and the facts in this case, we cannot find the trial court erred.

## II. Receivables from Loans

Husband argues that the receivables from two loans that he made to two different companies were his separate property. While he acknowledges that the loans were made during the marriage, he contends that he traced the proceeds used for those loans to his separate funds. We hold the trial court did not err in finding husband failed to adequately trace the loans to his separate funds.

Prior to the marriage, wife owned one house, and husband owned two houses. The parties also purchased a house during the marriage that they owned jointly. All four homes were sold during the marriage. Wife made $36,772 on the sale of her house. Husband made $174,580 on the sale of his two houses. The parties made $72,993 on the sale of the jointly owned house. The proceeds of these sales were deposited into a corporate account at Crestar Bank (now Suntrust) under the name of Creative Building Products, a company that husband started during the marriage. Both parties had signatory power over this account. Wife does not dispute that the proceeds from the sale of husband's houses were his separate property when they were deposited

- 11 -

into the account. She testified, however, that the parties intended to use the money in this account to purchase a new marital home.

After the last home was sold and the proceeds deposited in January 1999, the parties had a balance of $210,271 in the Crestar account. In April 1999, almost half of that money ($99,000) was used to pay the parties' 1998 taxes. In August 1999, $15,000 was transferred out of this account, apparently to Creative Building Products. In November 1999, $20,000 was deposited into the account.[7] In December 1999, $54,000 was taken out of the account. In August 2000, an additional $14,000 was taken out.

Husband admits that he withdrew a total of approximately $160,000 from this account and loaned that money to Creative Building Products and to his separate company, Creative Environment Company. He concedes that the loans were made during the marriage. When wife discovered that husband had withdrawn those funds, and only $44,000 remained in the account, she withdrew the remaining funds and used them to pay taxes that the parties jointly owed. When the parties separated, the Crestar account was effectively empty.

At trial husband presented an exhibit, titled "Taxes on Sale of Rental Property," to the trial court. The trial court found the exhibit confusing and concluded that the separate and marital funds in the Crestar account were so commingled that tracing the loans to husband's separate property was impossible. The court concluded that the receivables from the loans were marital property and divided them accordingly.

---

[7] The record does not indicate the source of these funds.

On appeal, husband argues that he provided sufficient evidence to trace the proceeds used for the loans to the sales of his separate property.[8] Husband claims that he proved the money for the loans was taken from his separate funds in the Crestar account. We disagree.

If the trial court ignores the applicable law or the evidence presented by the parties, thus abusing its discretion in determining the classification of the property, then this Court will reverse that court's equitable distribution award. Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000). Here, husband's exhibit addressed only the tracing of his separate funds deposited into the Crestar account, not whether marital or separate (either his or wife's) funds were then withdrawn and loaned to the two companies. As this Court has previously explained:

> When a spouse commingles separate and marital funds in a single account created during the marriage, the spouse claiming a separate share must shoulder the burden of tracing. If he cannot do so, the account remains wholly marital.
>
> Proof of the separate classification of source funds may be straightforward enough. Proving the classification of withdrawn funds can be more difficult. It requires an examination of where the withdrawn funds went, when and why they were transferred, for what purpose they may have been ultimately used, as well as what contemporaneous financial records show about each. In either context while classifying source funds or withdrawn funds a failure of proof undermines any rational basis for tracing. Whether that occurs while tracing source funds or withdrawn funds, the result is the same. The pro rata withdrawal theory goes wrong because it seeks not to infer actual intent, but rather serves as a substitute for it.

Robbins v. Robbins, 48 Va. App. 466, 478-79, 632 S.E.2d 615, 621-22 (2006) (citations omitted).

---

[8] On brief, husband also argues that the trial court erred in using the face values of the loans because the companies themselves were worth less. However, at trial, neither party presented evidence of the value of the companies. Husband also contends that the loans are not worth more than the value of the companies' tangible assets, but he presented no testimony on this assertion at trial and provides no authority for this proposition on appeal. During oral argument before this Court, neither argument was addressed more fully. Therefore, we find no evidence in the record for these arguments and do not address them further.

Husband is correct that he proved his separate property was deposited into the Crestar account. However, husband's analysis ignores the purpose of the account and the effect of activity in the account after the deposits. He does not trace his separate funds directly to the *withdrawals*. This Court has held that if:

> separate property is contributed to marital property, contributed to the acquisition of new property, or retitled in the names of both parties, and suffers a "loss of identity," the commingled separate property is transmuted to marital property. Code § 20-107.3(A)(3)(d)-(f). In other words, if a party "chooses to commingle marital and non-marital funds to the point that direct tracing is impossible," the claimed separate property loses its separate status. Melrod v. Melrod, 83 Md. App. 180, 574 A.2d 1, 5 (Md. App. 1990). Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the "unknown amount contributed from the separate source transmutes by commingling and becomes marital property."

Rahbaran v. Rahbaran, 26 Va. App. 195, 208-09, 494 S.E.2d 135, 141 (1997) (quoting Brett R. Turner, Equitable Distribution of Property 268 (1994)).

Here, the separate funds of the parties were so commingled with the marital funds as to no longer permit tracing of any separate property out of the account. Initially, both parties contributed separate property to the account as well as marital money. The account was the marital property of the parties, titled in the name of a company that was started during the marriage. The parties intended to use these funds to build a new marital home. The parties actually used a significant portion of the Crestar account to pay marital debt owed to the federal government. Nothing in the record suggests that husband intended to keep "his" portion of these funds separated from the marital funds and from wife's separate funds.

At some point prior to January 1999, based on the evidence in this record, approximately $74,074 was withdrawn from the account. No evidence suggested that money was taken from wife's separate proceeds, husband's separate proceeds, the marital proceeds, or some combination thereof. Once the proceeds from the sale of the jointly owned house were

- 14 -

deposited, withdrawals of $99,000 and $44,000 were taken from the account to pay taxes. Again, no evidence in the record suggests that the parties assumed these amounts were taken from separate funds, marital funds, or some combination of funds. Instead, the parties treated the account as a unified source of funds to pay marital debt, effectively treating the entire account as marital.

As in Asgari, where Mr. Asgari contributed separate funds to a joint account that contained marital funds, husband here commingled assets in a marital account, and the parties then deposited and withdrew funds from the account without concern for the separate or marital nature of those funds, "the balance regularly ebbing and flowing for months." 33 Va. App. at 403, 533 S.E.2d at 648. Thus, the separate nature of husband's proceeds was lost, the funds mixing together with each transaction, "resulting in the irreversible transmutation of separate into marital property." Id.

To trace his separate assets, husband needed to do more than prove that at one point he had deposited approximately 60% of the source funds for the account. He also needed to prove that, even though those funds were commingled with funds from other sources, his separate fund proceeds remained discernibly separate in character. Husband did not meet his burden here. The evidence did not prove that only husband's separate funds were withdrawn from the Crestar account and loaned to the companies. The trial court did not err in finding the receivables from these loans were a marital asset.

### III. Tax Credits

Wife made various payments toward the parties' outstanding tax bills after the parties separated. She made some of these payments with her separate funds, and she made some payments with marital funds. Husband concedes that she was entitled to credit for the payments she made using her separate funds. However, he argues that the trial court's award of those

- 15 -

credits included $18,500 that was paid with marital funds.[9] We agree with husband and find that the trial court erred. Thus, we remand for a recalculation of this credit.

After husband and wife separated, wife made one withdrawal of $6,000 and one withdrawal of $12,500 from marital funds in a Wachovia securities account. Wife claimed she used all this money in 2002 to reduce the parties' outstanding joint tax liability. At trial, while reviewing Exhibit 23, which summarized the tax debts and the payments that she made, wife conceded that she used part of the $12,500 for a $9,579 tax payment in April 2002.

In her trial brief, wife's calculation of her credit for reducing the marital tax debt included the $9,579 payment. The only 2002 marital tax payment that wife did not include in her calculations was a payment of $559.[10] Wife noted in her trial brief that any payments made with marital funds should not be included in the credit calculation.

The trial court adopted wife's calculation and awarded her a credit of $23,457.09 toward the equitable distribution of the parties' assets. Although husband asked that the Wachovia securities account be valued as of the time of the separation, i.e., prior to wife's withdrawal of $18,500, so that the withdrawn funds would be divided in the distribution of that account, the trial court denied his request and valued the account as of the 2006 hearing date.

"On appeal, we will not overturn a trial court's monetary award of marital property unless we find an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." Fowlkes v. Fowlkes, 42 Va. App.

---

[9] Wife claims husband did not preserve this argument. However, during the April 5, 2007 hearing, husband clearly objected to the calculation of this credit, arguing that it included the $18,500 of marital money that she withdrew from the Wachovia securities account (an account consisting of marital funds) and noting that, because the court used a valuation date for this account after these withdrawals, those marital funds were not properly considered in the overall distribution of marital property.

[10] Wife did not know who made this payment, so she did not claim it.

1, 7, 590 S.E.2d 53, 56 (2003). Here, the evidence proved that wife used $18,500 of marital funds to make tax payments in 2002. She included all her 2002 payments toward the joint tax debt when she calculated the credit that she argued she was owed for making payments with her separate funds. She did not subtract the $18,500 in payments that she made with marital funds. Therefore, wife's calculations gave her credit for making payments of $18,500 with her separate funds when those payments were actually made with marital funds. As she withdrew the $18,500 from the Wachovia securities account before the valuation date used by the trial court to determine the value of the marital property, which prevented the court from including these funds in equitable distribution, wife in effect received the entirety of the $18,500. Therefore, we reverse the trial court's award of a $23,457.09 credit to wife and remand this case to the court for recalculation of that award consistent with this opinion.

## IV. Conclusion

We find the trial court did not err in its consideration of the factors under Code § 20-107.3(E) in the overall equitable distribution of the marital property, given the facts in this case and our standard of review, and did not err in classifying the receivables from two loans as marital property. We find the trial court did err, however, in determining the amount of its award to wife of a credit for tax payments, and we reverse and remand the case for recalculation of the correct amount of that credit. We deny wife's request for attorney's fees and costs.

Affirmed in part;
reversed and
remanded in part.