COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Chafin and Malveaux
Argued at Norfolk, Virginia


JANE ARLENE FRAKES
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1951-16-1            JUDGE MARY BENNETT MALVEAUX
                                                          AUGUST 1, 2017
DANNY JOE FRAKES


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

Barbara A. Fuller (Fuller, Hadeed & Ros-Planas, PLLC, on brief),
for appellant.

Samuel R. Brown, II (Samuel R. Brown, II, PLLC, on brief), for
appellee.


Jane A. Frakes ("wife") appeals a final order of the circuit court on the issue of equitable

distribution upon the termination of her marriage to Danny J. Frakes ("husband").  She argues that

the circuit court erred in classifying a parcel of Michigan real estate as separate property because the

court relied on parol evidence to contradict the deed.  She also argues that the court erred in giving

husband both sole title to the marital home and a monetary award, which reflected the money he

invested in the home as well as its negative value.  We conclude that the trial court did not err in

classifying the Michigan home.  However, we hold that the circuit court erred by failing to classify

much of the remaining property and debt at issue.  Consequently, we reverse and remand for further

proceedings.

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

We review the evidence in the light most favorable to husband, who prevailed below. See Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

Husband and wife married in August 2010 in South Dakota. Shortly thereafter, the couple moved to Norfolk, Virginia. In January 2014, wife moved out of the marital home. A year later, the spouses filed cross-petitions for divorce. The circuit court ultimately ruled that wife had deserted husband and entered a decree of divorce on those grounds.

The court also heard evidence related to the couple's assets in anticipation of equitable distribution. In addition to evidence related to each spouse's various savings and retirement accounts, the court heard evidence regarding two different parcels of real property that are at issue in this appeal.

### A. The Michigan Property

In 2000, husband inherited a home in Michigan from his mother. According to both parties, he collected all income that the property generated.

In April 2013, husband and wife both executed a quit claim deed that essentially transferred title in the property to themselves. The deed identified the grantors as "Danny J. Frakes, a married man, and Jane A. Frakes, his wife." The grantees named in the instrument, meanwhile, are "Danny J. Frakes and Jane A. Frakes, husband and wife." Husband and wife stipulated that the deed was properly recorded.

Wife never resided at the Michigan home. She did, however, drive to Michigan with husband to clean out the property. After they spent about two weeks cleaning the home, they sold it for $42,000.

At trial, husband testified that wife had asked to be added to the deed to eliminate any doubt that the property would pass to her if he died, and he agreed to do so. He testified that he

did not realize that he was conveying a present interest in the property to his wife. He claimed that he did not understand the difference between a gift and other types of transfers.

## B. The Norfolk Marital Home

Prior to their marriage, husband and wife began looking for a home in Norfolk, eventually settling on a two-story duplex. According to wife, the property was a "fixer-upper"; its wood was rotting in places, there were holes in the ceiling, and it was infested with black mold. Husband and wife nevertheless agreed that they should buy and renovate the property.

In February 2010, husband purchased the Norfolk residence as its sole owner for a contract price of $160,000. To complete the transaction, husband withdrew $35,000 from his Individual Retirement Account ("IRA") to cover the down payment and closing costs. Wife did not contribute any money towards purchasing the home. Husband financed the balance of the purchase by taking out a $128,000 mortgage.

Wife moved into the home after she moved to Norfolk. About two months after their wedding, husband transferred the property into both his and wife's names through a deed of gift.

In April 2013, husband contracted with a home improvement company to remodel the home for a contract price of $60,000. According to the contractor, all of the work was completed within about three months. Husband testified that he withdrew approximately $68,500 from his IRA to pay for these improvements. Wife, meanwhile, did not contribute any money towards improving the property.

Despite these improvements, William Callahan, an appraiser, testified at trial that the home was in "disarray" and that the home's second floor was uninhabitable because it was, in essence, "completely unfinished." He also testified that the downstairs space had numerous issues to resolve before it could be considered "marketable."

Consequently, husband and wife have negative equity in the home. Callahan appraised the home's value at about $90,500 as of July 21, 2016. After refinancing the mortgage, however, the outstanding balance on the loan as of July 2016 was $113,863.

### C. The Equitable Distribution Order

In a final order, the circuit court concluded that the Michigan property belonged to husband as his separate property. The court found that there was insufficient evidence of his intent to make an *inter vivos* gift of the property and determined that he had instead retitled the property for purposes of planning his estate.

In contrast, the court found that the evidence unambiguously demonstrated husband's donative intent when he retitled the Norfolk home under both his and wife's names in a deed that is self-described as a "DEED OF GIFT." In distributing this marital asset, the court awarded the husband sole ownership of the home. Moreover, the court found that husband had invested a total of $88,000 from his own IRA into the marital home, a figure that included both $30,000 for his down payment and $58,000 for subsequent repairs. Additionally, the court found that the home had an appraised value of negative $23,000, in light of the fact that the balance on the mortgage exceeded the market value as appraised by Callahan. Adding all of these figures together, the court found that the husband had invested a net sum of $111,000 into the marital home. The court ordered wife to pay husband forty percent of this net investment—a lump-sum monetary award of $44,400.

The only other asset of definite value distributed by the court was a truck worth about $2,675, which the court awarded to wife. The court declined to make any further award, including spousal support and attorney's fees.

## II.  ANALYSIS

### A.  The Circuit Court Did Not Err in Considering Parol Evidence Regarding the Retitled Michigan Home Because the Deed Did Not Demonstrate Unambiguous Donative Intent

Wife's first assignment of error relates to the circuit court's classification of the Michigan home as husband's separate property, which was based on its finding that husband did not intend to retitle the property as a gift.  Her only argument is that the court should not have considered husband's testimony about his intent when retitling the Michigan home because the parol evidence rule bars such extrinsic evidence.

Generally speaking, "property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise," is classified as marital property subject to equitable distribution.  Code § 20-107.3(A)(2).  This rule usually extends to one spouse's separate property that is retitled in the names of both spouses jointly; such property is "deemed transmuted to marital property."  Code § 20-107.3(A)(3)(f).

The Code provides an exception, however, for retitled separate property if it is traceable by "a preponderance of the evidence and was not a gift."  Id.  In such cases, "the retitled property shall retain its original classification."  Id.  The spouse who owned the separate property need not prove the absence of a gift to invoke this exception; rather, the spouse who seeks to establish a gift bears the burden of proving each of the required elements—delivery, acceptance, and donative intent—by clear and convincing evidence.  Prizzia v. Prizzia, 58 Va. App. 137, 163, 707 S.E.2d 461, 473-74 (2011).

While "[n]o presumption of gift arises from the fact that . . . property was retitled," Theismann v. Theismann, 22 Va. App. 557, 565, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996), the deed's *contents* can sometimes prevent a donor from presenting extrinsic evidence that the conveyance *was not* a gift.  If the deed is "unambiguous on its face, both for the purpose of retitling and proof of donative intent, parol evidence surrounding

its execution [is] not admissible" to prove a contrary intent. Utsch v. Utsch, 266 Va. 124, 127, 581 S.E.2d 507, 508 (2003). Whether a deed is ambiguous presents a question "not . . . of fact but of law." Id. at 129, 581 S.E.2d at 509. We review such questions *de novo*. Pocahontas Mining LLC v. CNX Gas Co., LLC, 276 Va. 346, 352, 666 S.E.2d 527, 530 (2008).

Here, we find that the Michigan deed is not unambiguous either "for the purpose of retitling" or for "proof of donative intent." Utsch, 266 Va. at 127, 581 S.E.2d at 508. Wife overlooks a crucial problem with the deed: the document lists her and husband together both as grantees *and as grantors*. Thus, it is impossible to tell from the face of the instrument whether any new interest was conveyed to wife, let alone whether such transfer was a gift.

Although Michigan generally presumes that a conveyance to two or more persons creates a tenancy in common unless express language creating a joint tenancy is used, see Mich. Comp. Laws § 554.44, its law provides an exception for any grant to a husband and wife, see Mich. Comp. Laws § 554.45.[1] Moreover, Michigan's "longstanding common law provides that, when a deed is conveyed *to a husband and wife*, the property is held as a tenancy by the entirety." Thomas v. Dutkavich, 803 N.W.2d 352, 358 (Mich. Ct. App. 2010) (quoting Walters v. Leech, 761 N.W.2d 143, 146 (Mich. Ct. App. 2008)).

Here, the deed lists both spouses together as grantors, describing them as "a married man" and "his wife." This language is sufficient under Michigan law to indicate that they already jointly owned the property in a tenancy by the entirety. And while we acknowledge that this is almost certainly the result of a scrivener's error, that is irrelevant. What matters is that

---

[1] Although Virginia courts must apply Code § 20-107.3(A)(3)(f) in determining whether retitled real estate should be classified as marital or separate property, the terms of a deed to real property must be interpreted according to the law of the situs state. See generally 4A Michie's Jurisprudence, Conflict of Laws, Domicile and Residence § 30 (2016) ("The *lex rei sitae* governs as to contracts relating to real estate, as to the rights of parties thereto, the mode of transfer and alienation and the nature and extent of the interest therein."). We therefore rely on Michigan law to determine whether a donative transfer is unambiguously apparent from the face of this deed.

one cannot discern whether any new interest was conveyed to wife without reference to an extrinsic source—specifically, the prior deed in the chain of title. Thus, the deed is not "unambiguous on its face . . . for the purpose of retitling" the property. Utsch, 266 Va. at 127, 581 S.E.2d at 508. And without a transfer apparent from the face of the document, we also cannot conclude that it "show[ed] the donative intent of Husband in making the transfer." Id. at 129, 581 S.E.2d at 509.

As we find that the deed does not clearly and unambiguously show a donative transfer, we conclude that the parol evidence rule did not bar the trial court from considering husband's testimony about the instrument.

### B. Classification and Valuation of Remainder of the Spouses' Property and Debt

Wife's remaining two assignments of error relate to the circuit court's disposition of their Norfolk home. "On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)).

Wife and husband disagree over whether, under Fox v. Fox, 61 Va. App. 185, 195, 734 S.E.2d 662, 667 (2012), property encumbered by excessive debt can be equitably distributed between two spouses at all. Additionally, wife challenges the court's monetary award to husband on two different grounds. She first argues that because negative equity provides no basis for a monetary award, see Hodges v. Hodges, 2 Va. App. 508, 515, 347 S.E.2d 134, 138 (1986), the court should not have included the home's negative equity when calculating its award. And she suggests that because husband had already received the home itself,

- 7 -

compensating him for part of the funds he spent purchasing and improving the property is tantamount to a double recovery.

Husband's counterargument depends upon a very different interpretation of the order. In his view, the order does not pay him for property he already received. Rather, he suggests that its purpose was to facilitate the distribution of the rest of the marital estate, which—he asserts—includes part of wife's 401(k) and banking accounts.

We find that we cannot resolve these arguments because the circuit court did not properly classify and value all of the spouses' property. Contrary to husband's unsupported assertion on brief, the final order concerning equitable distribution contains no findings classifying wife's financial assets as marital property, separate property, or hybrid property. Instead, the order merely recites the parties' arguments regarding those assets.[2] The order also does not classify any of husband's financial assets. Further, the order does not address whether the mortgage on the Norfolk home is separate debt or marital debt.

These omissions, in and of themselves, represent a "misapplication or wrongful application of the equitable distribution statute." Wiencko, 62 Va. App. at 230, 745 S.E.2d at 178 (quoting McIlwain, 52 Va. App. at 661, 666 S.E.2d at 547). Code § 20-107.3 mandates a three-step procedure in fashioning an equitable distribution award, the first of which requires a court to classify all property according to ownership:

> There are three stages to making an equitable distribution of property. The court first must classify the property as . . . separate or marital [or hybrid property]. The court then must assign a value to the property based upon evidence presented by both parties.

---

[2] At oral argument, husband conceded that the trial court "doesn't come out and say 'this is marital property,'" but he argued that the court made the necessary findings by implication when it "went as far [as] to make a determination as to the increase in value during the marriage." The words the court actually used, however, were that the "*Defendant argues* that Wife's . . . account increased substantially during the marriage."

Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E).

Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991).[3]

Because those steps were not followed here, the trial court erred in making the monetary award. We therefore reverse and remand for the trial court to classify and value all of the assets and debt consistent with the statutory scheme.

### III. CONCLUSION

Although the circuit court correctly classified the Michigan home as separate property and the Norfolk home as marital property, the court's failure to classify the rest of the property at issue was in error. We reverse and remand for proceedings consistent with this opinion and the requirements of Code § 20-107.3. The court shall also reconsider the issues of spousal support and attorney's fees in light of any new considerations that flow from these further proceedings. See Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156 (2005) (*en banc*); Stumbo v. Stumbo, 20 Va. App. 685, 694, 460 S.E.2d 591, 596 (1995).

Affirmed in part, reversed in part, and remanded.

---

[3] The Code prescribes a similar procedure for apportioning debts between spouses. First, the court must "determine the nature of all debts of the parties, or either of them, and shall consider which of such debts is separate debt and which is marital debt." Code § 20-107.3(A). The court then must "determine the amount of any such debt as of the date of the last separation of the parties . . . and the extent to which such debt has increased or decreased from the date of separation." Id. The court then may apportion marital debts after considering the factors in subsection E.