# COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Annunziata
Argued by videoconference

COLLEEN LEYRER

MEMORANDUM OPINION[*] BY
v.      Record No. 0585-21-4      JUDGE MARY BENNETT MALVEAUX
JANUARY 18, 2022

REZA HAJIHA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Katelin T. Moomau (Family First Law Group, PLLC, on briefs), for
appellant.

Sharon Voyles Filipour (Kinsey, Lynch & Filipour, on brief), for
appellee.

In 2019, the circuit court entered a final decree divorcing Colleen Leyrer ("wife") and Reza

Hajiha ("husband"). Wife appealed, claiming the circuit court erred in certain determinations

regarding the equitable distribution of the parties' marital home. We reversed and remanded to the

circuit court for clarification as to its classification of the parties' contributions to the marital home

and its calculation of husband's share of the equity. *Leyrer v. Hajiha*, No. 0502-20-4 (Va. Ct. App.

Dec. 22, 2020) (unpublished order). The circuit court on remand made additional findings, which

wife now appeals. Specifically, she contends that the circuit court erred by improperly tracing her

separate property. For the following reasons, we reverse the circuit court's equitable distribution

award and remand for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Starr v. Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Husband and wife married on May 1, 2010.  They had one child, K.H.,[1] born on May 19, 2010.  The parties separated in April 2018, and on August 14, 2018, husband filed for divorce.

At trial, husband and wife made the following stipulations concerning the marital home. At the time of their separation, the parties were joint owners of the marital home, located at 5110 Knapp Place in Alexandria.  The residence was purchased on December 1, 2009, five months prior to their marriage.  Regarding the down payment for the home, the parties stipulated that "[t]here was a wire transfer of $70,020 from the Husband's family to pay toward this purchase and the Wife paid $39,073 toward this purchase."  In addition, husband had contributed $5,000 for a deposit.

The wire transfer itself, which was entered into evidence, indicated that the transfer from husband's family had been made November 12, 2009, about three weeks prior to the purchase of the home.  The wire transfer was made out directly to wife with the notation "GIFT" listed in a portion of the form reserved for the description of the transfer.

The parties also stipulated that they had borrowed $424,000 for the purchase of the marital home and the outstanding mortgage balance at the time of separation was $364,061.32. Further, the marital home had a fair market value of $635,000 on the date the parties separated.

At trial, wife testified that she had purchased the marital property solely in her name prior to the marriage but affirmed that it had been the parties' "understanding that it would later be

---

[1] We use initials, instead of the child's name, to protect the child's privacy.

jointly titled." After the marriage, the property was retitled in both parties' names. Wife testified that the $70,020 had been a "gift that [husband's] parents made that went to [wife] and then it went into the home." Counsel for husband asked wife if she understood that "[husband] had done some speculation in Iran and it had paid off and that was [husband's] money?" Wife replied that she did not "really know where that money came from other than what it says in the document that his parents had sent it."

Husband acknowledged at trial that his father had transferred $70,020 directly to wife's bank account prior to the parties' marriage. However, husband testified that the funds had been his own money and not his father's. Husband stated that he had saved some money in the United States and also had money from working in Iran. He had sent this money back to Iran for his father to hold in a bank account there due to the high rate of interest provided by Iranian banks at the time. Husband testified that wife had known that the money would be used as a down payment for the marital home and it had been "clear that this was basically [husband's] share of purchasing this property." Husband admitted that there had been no written agreement regarding the transfer of funds, only a verbal agreement between the parties. Further, husband testified that he had not intended to gift wife the money.

Husband asked the court to divide the marital share in the home in half and to classify the $70,020 as husband's separate contribution. Wife argued that the $70,020 was instead wife's separate property that was traceable to her.

At trial, the circuit court reserved its ruling on the issue of the marital home. While not ruling on the matter, the court did state, "I know what's fair, but I'm not sure about what's legal," and "If I've got my way about it, $70,000, frankly, comes from [husband]."

In the parties' final divorce decree, entered on December 27, 2019, the court issued rulings as to child custody, child support, personal property, and the division of savings and

retirement accounts. In addition, the court ordered that husband was entitled to $137,902 as his share of the equity in the marital home. The court did not explain how the parties' contributions to the marital home were classified or how it calculated husband's share of the equity.

On January 27, 2020, wife appealed the final decree of divorce to this Court. Wife argued that the circuit court had improperly traced her separate property interest in the marital home. She also asserted that the circuit court had failed to state how it had classified the various contributions to the property and calculated husband's share of the equity. On December 22, 2020, this Court issued an order reversing the decision of the circuit court and remanding the case back to it "for clarification as to how it classified the contributions and how it calculated the amount of husband's share." *Leyrer*, No. 0502-20-4, at *4.

On March 10, 2021, the circuit court entered an order clarifying its classification and division of the equity in the marital home. In this order, the court stated that it had determined that the $5,000 deposit and $70,020 in funds transferred from husband's family to wife's account were husband's separate property. It had also determined that the $39,073 paid by wife at the time of purchase and the $38,282.48 she paid in post-separation mortgage payments[2] were wife's separate property. Starting with these separate property interests, the court then calculated husband's total share in the equity of the home at approximately $152,400. However, the court stated that, after using "this calculation as a baseline," it had taken into consideration wife's monetary and nonmonetary contributions to the household during the marriage, which it found "significantly exceeded those of husband." Based on this finding, the circuit court had found it "equitable" to increase wife's marital share. The court stated that it did "not have a specific recollection" of how it chose the $137,902 figure as husband's share but noted that it had made

---

[2] Following the parties' separation, wife paid $38,282 on the principal of mortgage.

"a conscious decision to reduce husband's share by approximately $15,000.00 in an effort to achieve an equitable division of the parties' property."

Wife now appeals the circuit court's March 10, 2021 order.

## II. ANALYSIS

On appeal, wife argues that the circuit court erred by improperly tracing her separate property, resulting in an award of $137,902 to husband from the equity of the marital residence. Wife specifically asserts that the court's award of $137,902 to husband must have resulted from the court's misclassification of the contributions made towards the equity of the marital residence.[3]

"On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Wiencko v. Takayama*, 62 Va. App. 217, 229-30 (2013) (quoting *McIlwain v. McIlwain*, 52 Va. App. 644, 661 (2008)). Because "the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." *David v. David*, 64 Va. App. 216, 221 (2015) (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)). However, we review "pure questions of law concerning statutory interpretation . . . *de novo*." *Gilliam v. McGrady*, 279 Va. 703, 708 (2010).

Pursuant to Code § 20-107.3, when proceeding with an equitable distribution, a court must follow certain steps. Specifically, the court must (1) "first . . . classify the property," (2) "assign a value to the property," and then (3) "distribute[] the property to the parties, taking

---

[3] Wife also argues that the court's award of $137,902 to husband must have resulted from "a mathematical error of some sort." Because we conclude that the circuit court erred in its initial classification concerning the contributions to the marital home, we do not address her argument regarding any mathematical error in the circuit court's calculation of husband's equity as it is not necessary for the resolution of this appeal.

into consideration the factors presented in Code § 20-107.3(E)." *Fox v. Fox*, 61 Va. App. 185, 193 (2012) (quoting *Marion v. Marion*, 11 Va. App. 659, 665 (1991)).

Code § 20-107.3 provides that property may be classified as "separate," "marital," or "part marital . . . and part separate." *See* Code § 20-107.3(A)(1)-(3). Marital property includes "all property titled in the names of both parties" and "property acquired by either spouse during the marriage" "in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2)(i), (iii). The definition of separate property includes, in pertinent part, "all property, real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1)(i). Hybrid property involves a mixture of "part marital property and part separate property." Code § 20-107.3(A)(3).

In addition, Code § 20-107.3(A)(3)(f) provides that "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification."

Further, the statute explains that

> [w]hen the separate property of one party is commingled into the separate property of the other party, or the separate property of each party is commingled into newly acquired property, to the extent the contributed property is retraceable by a preponderance of the evidence and was not gift, each party shall be reimbursed the value of the contributed property in any award made pursuant to this section.

Code § 20-107.3(A)(3)(g).

At issue here is the circuit court's classification of the funds transferred by husband's father to wife's bank account prior to the parties' marriage. Wife argues that the circuit court erred in classifying these funds as husband's separate property; instead, wife asserts that because

the funds were sent to her prior to the parties' marriage, the $70,020 should have been classified as her separate property.[4]  Based on the plain language of Code § 20-107.3, we agree with wife.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).  "We look to the plain meaning of the statutory language, and presume that the legislature chose, with care, the words it used when it enacted the relevant statute."  *Dixon v. Dixon*, 71 Va. App. 709, 718-19 (2020) (quoting *Fox*, 61 Va. App. at 196).

As noted above, Code § 20-107.3(A)(1)(i) defines separate property in part as "all property, real and personal, acquired by either party before the marriage."  *See also Moran v. Moran*, 29 Va. App. 408, 411-12 (1999) ("Property that is acquired by either party before the marriage is separate property, Code § 20-107.3(A)(1)(i), subject to being transmuted into hybrid property . . . .").  Thus, based on this statutory definition, the dispositive question in the instant case is which party "acquired" the $70,020 prior to the parties' marriage.

"Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used."  *Robinson v. Robinson*, 50 Va. App. 189, 194-95 (2007) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)).  "Acquire" is defined as "[t]o gain possession or control of; to get or obtain."  *Acquire*, *Black's Law Dictionary* (11th ed. 2019).

---

[4] The marital residence, which had been purchased by wife prior to the marriage, was later jointly titled during the marriage and, therefore, pursuant to Code § 20-107.3(A)(3)(f), was presumed to be marital property.  However, despite the joint title, if the transmuted property "is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification."  Code § 20-107.3(A)(3)(f); *see also Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 85 (2014) (holding that, pursuant to Code § 20-107.3(A)(3)(g), "circuit courts may consider commingling of property that occurs before the marriage of the parties in fashioning an equitable distribution award").

Based on the undisputed facts in the record, we conclude that wife gained possession or control of, or obtained, the $70,020 prior to the parties' marriage and thus the funds were her separate property. Here, it is undisputed that the $70,020 used toward the down payment on the marital residence came from husband's family. It is further undisputed that these funds came directly to wife in the form of a wire transfer. This wire transfer was introduced into evidence and reflected that the funds were sent to wife's bank account on November 12, 2009, prior to the parties' marriage. Thus, the stipulated evidence clearly demonstrates that wife obtained and gained possession of the funds prior to the marriage.

While is clear from the record that wife obtained legal title to the funds when they were transferred to her from husband's father, we acknowledge that "[h]ow the property is titled generally is not dispositive of its classification." *McDavid v. McDavid*, 19 Va. App. 406, 410 (1994). Instead, "[a] court equitably classifies property based upon statutory guidelines, not according to which party holds legal title." *David v. David*, 287 Va. 231, 237 (2014). In this case, it is not simply wife's holding title to the funds that leads us to determine that they were her separate property. Rather, the statutory guidelines themselves compel us to conclude that the court misclassified the $70,020, as wife was the party that acquired the funds prior to the parties' marriage. Based upon the plain language of Code § 20-107.3(1)(A)(i), we must conclude that the circuit court erred in not classifying the $70,020 as wife's separate property contribution to the equity in the marital residence.

In reaching this conclusion, we also acknowledge husband's testimony that the $70,020 was his own money that his father was holding for him in Iran. The circuit court, in determining that the funds were husband's separate property, must have credited this testimony. However, even accepting husband's testimony as true, in viewing the evidence in the light most favorable to husband as the prevailing party on appeal, we conclude that the court erred in classifying the

funds as husband's rather than wife's separate property. Assuming that the initial source of the funds was husband's own earnings and savings, these funds were at some point given to husband's father, who then transferred the money directly to wife prior to the parties' marriage. Therefore, pursuant to the statute, these funds were wife's separate property, as she acquired them prior to marriage.[5]  Accordingly, we conclude that the circuit court's classification of the property was plainly wrong. *David*, 64 Va. App. at 221.

The first step a court must take in equitable distribution is to classify the parties' property. *Fox*, 61 Va. App. at 193. Here, the court erred in this initial step, and we therefore reverse and remand its equitable distribution award for reconsideration consistent with the holding of this opinion.[6]

Attorney Fees on Appeal

Both parties request that this Court award the attorney fees incurred on appeal. This Court has discretion to grant or deny such fees. *See* Rule 5A:30(b); *see also O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." *Alwan v. Alwan*, 70 Va. App. 599, 613 (2019) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). In making this determination, this

---

[5] As noted above, when separate property is retitled in the joint names of the parties, as it was here, the retitled property is transmuted to marital property, unless the property can be sufficiently retraced to separate property and was not a gift. Code § 20-107.3(A)(3)(f). Here, we find that wife sufficiently retraced the $70,020 as her separate property. "If the party claiming [a] separate interest in transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'" *von Raab v. von Raab*, 26 Va. App. 239, 248 (1997). We do not express any opinion as to whether, on remand, such a finding is appropriate under the proper standard.

[6] At trial, husband asserted that the court should have imposed a constructive trust on the funds as to avoid the unjust enrichment of wife. However, the court did not make any findings as to this theory and husband does not argue on appeal that the facts warranted the imposition of a constructive trust on the funds. We again do not express any opinion as to whether, on remand, such a finding is appropriate under the proper standard.

Court "may consider all the equities of the case." Rule 5A:30(b)(3). In addition, the Court's decision is not limited to whether a party prevailed on appeal but considers whether the issues raised were "frivolous." *Wright v. Wright*, 61 Va. App. 432, 470 (2013) (quoting *O'Loughlin*, 23 Va. App. at 695). After considering the record before us, we deny both parties' requests for appellate attorney fees.

## III. CONCLUSION

For these reasons, we hold that the circuit court erred when it classified the $70,020 contribution to the down payment on the marital residence as husband's separate property instead of wife's separate property. Accordingly, we reverse the equitable distribution award in its entirety and remand the case for reconsideration consistent with this opinion. Additionally, because the circuit court must correct its equitable distribution award, it must also consider on remand any necessary adjustments to its child support award in light of the correction to the equitable distribution. *See* Code § 20-108.1(B)(11), (15) (permitting a court to deviate from the presumptive calculation under the child support guidelines based on the "[e]arning capacity, obligations, [and] financial resources" of the parents as well as "the equities for the parents and children"). Finally, we decline to award either party the cost of their attorney fees on appeal.

*Reversed and remanded.*